UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALISA MCCOY, PATRICK MCCOY, and JAMES
MCCOY,

                              Plaintiffs,

              -against-

ADMINISTRATION FOR CHILDREN'S SERVICES,
DAVID HANSELL, NEW YORK CITY POLICE
DEPARTMENT, VICTORIA PALUMBO, OFFICE OF
CHILDREN AND FAMILY SERVICES, SCOTT
SCHWARTZ ESQ., THE NEW YORK CITY
DEPARTMENT OF EDUCATION, NEW YORK CITY
CENTRAL REGISTRY FOR ABUSE AND NEGLECT
OF CHILDREN, SUEANN SIMMONS, CITY OF
NEW YORK, CASSANDRA KELLEHER-
DONNARUMA, JOHN DOE, and JANE DOE,

                             Defendants.
----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
23-CV-03019-HG-SJB

**BULSARA, United States Magistrate Judge:**

       Plaintiffs Alisa McCoy ("Alisa"), Patrick McCoy ("Patrick"), and James McCoy

("James," and collectively, "Plaintiffs"), all proceeding *pro se*, brought this case against

several sets of Defendants: The Office of Children and Family Services ("OCFS"), the

New York State Central Registry for Abuse and Neglect of Children ("SCR"), and

Cassandra Kelleher-Donnaruma ("Kelleher-Donnaruma," and collectively, the "State

Defendants"); the City of New York (the "City"), the Administration of Child Services

("ACS"), Sueann Simmons ("Simmons"), Victoria Palumbo ("Palumbo"), David Hansell

("Hansell"), the New York City Police Department ("NYPD"), and the New York City

Department of Education ("NYDOE," and collectively, the "City Defendants"); and Scott

Schwartz ("Schwartz").  (Am. Compl. dated Aug. 23, 2023 ("Am. Compl."), Dkt. No. 28).

Plaintiffs allege that their constitutional rights under the Fourth, Sixth, and Fourteenth

Amendments were violated in removal proceedings and neglect petitions brought against Plaintiffs by the State and City Defendants. (*See id.* ¶¶ 218–328). Plaintiffs also assert a *Monell* claim against the City. (*Id.* ¶¶ 329–40). All Defendants filed motions to dismiss. (State Defs.' Mot. to Dismiss dated Oct. 11, 2023, Dkt. No. 31; Schwartz Mot. to Dismiss dated Oct. 11, 2023, Dkt. No. 34; City Defs.' Mot. to Dismiss dated Oct. 11, 2023, Dkt. No. 38). For the reasons stated below, the Court respectfully recommends that the State Defendants' motion to dismiss be granted in part and denied in part, the City Defendants' motion be granted in part and denied in part, and Schwartz's motion be granted in full.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of the Defendants' motion to dismiss, the Court is "required to treat [the Amended Complaint's] factual allegations as true, drawing all reasonable inferences in favor of [Plaintiffs] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

Plaintiff Alisa McCoy, a Staten Island paralegal, is the mother of three children: Plaintiffs Patrick and James McCoy, who, at the time of the Amended Complaint, were minors, and another son, Dylan McCoy. (Am. Compl. ¶¶ 4–6, 22, 64). Alisa and the father of the children, Tom McCoy, were separated and maintained joint custody of their children. (*Id.* ¶ 24). Beginning in January 2017, Plaintiffs allege that ACS began a campaign of harassment. On January 31, 2017, Alisa learned that Patrick and James were off school grounds, leading to Alisa becoming "upset" and "vocal" about the

school's lack of knowledge of her children's whereabouts.  (*Id.* ¶¶ 63–70).  The school reported the incident to ACS, (*id.* ¶ 73), and an ACS caseworker, Delilah Pedroza, made an unscheduled visit to Plaintiffs' home.  (*Id.* ¶ 71).  Weeks later, on February 20, 2017, another ACS caseworker, Defendant Simmons, visited the home.  (*Id.* ¶¶ 79–80).  Simmons told Alisa that ACS had received an anonymous complaint that she had been hospitalized in Washington, D.C., that week, and that Patrick and James had been left unsupervised.  (Am. Compl. ¶¶ 82, 84–85).  In the weeks that followed, Plaintiffs allege that Simmons made several more, largely adversarial visits to their house.  (*Id.* ¶ 90).

On March 8, 2017, Simmons filed petitions of neglect for both Patrick and James with the Richmond County Family Court (the "Neglect Petitions").[1]  (*Id.* ¶ 91; Neglect Petitions).  The Neglect Petitions detailed allegations of neglect against Alisa and sought the temporary removal of Patrick and James.  (*See* Neglect Petitions at 3, 6–7).  In an *ex parte* court proceeding before family court Judge Arnold Lim, the court granted ACS a temporary order of removal for both Patrick and James and ordered them to be released into their father's custody under ACS supervision.  (March Family Court Order at 1).

---

[1] The Neglect Petitions and family court orders are attached to the City Defendants' motion to dismiss.  (*See* Neglect Petition Case dated Mar. 8, 2017 ("Neglect Petitions"), attached as Ex. A to Decl. of Alfred Miller, Jr. ("Miller Decl."), Dkt. No. 39-1; Richmond County Family Ct. Order dated Mar. 8, 2017 ("March Family Court Order"), attached as Ex. B to Miller Decl., Dkt. No. 39-2; Richmond County Family Ct. Order dated July 7, 2017 ("July Family Court Order"), attached as Ex. C to Miller Decl., Dkt. No. 39-3).  The Neglect Petitions and family court orders—and the removal that resulted therefrom—are the basis for Plaintiffs' § 1983 claims.  They are referenced and discussed extensively in the Amended Complaint.  (*E.g.*, Am. Compl. ¶¶ 91–96).  They are therefore incorporated by reference.  *See, e.g.*, *Chan v. City of New York*, No. 19-CV-7239, 2024 WL 1452381, at *2 n.1 (E.D.N.Y. Feb. 15, 2024) (finding that underlying criminal complaint that was discussed extensively in § 1983 complaint was incorporated by reference), *report and recommendation adopted*, Order (Mar. 25, 2024).

The family court also entered a temporary order of protection ("TRO") on Patrick's and James's behalf against Alisa. (*Id.* at 2).

Late in the evening on March 8, 2017, ACS and the NYPD effectuated the removal of Patrick and James from Alisa's custody. (Am. Compl. ¶¶ 97, 102). Plaintiffs allege that the NYPD "kicked down" their front door and put Alisa in handcuffs. (*Id.* ¶¶ 97–99). Simmons served Alisa with the Neglect Petitions, and NYPD officers physically removed Patrick and James from the home. (*Id.* ¶¶ 101–02). Patrick and James were brought to the emergency room, where they were examined for signs of abuse or neglect; the doctor confirmed that there were no such signs. (*Id.* ¶¶ 103, 116).

On March 24, 2017, Alisa applied for court-appointed counsel in the neglect proceedings, and Defendant Schwartz was appointed to be her counsel. (*Id.* ¶ 120). On March 30, 2017, the family court held a full hearing on the propriety of the removal. (*Id.* ¶ 167). Judge Lim evaluated the medical records provided by ACS and vacated the TRO and order of temporary removal, directing Patrick and James to be returned to Alisa's custody. (Am. Compl. ¶¶ 172–73). A further court proceeding was scheduled for July 7, 2017. (*Id.* ¶ 279).

After a hearing on July 7, 2017, the family court entered another order of removal, finding that Alisa was unable to safely care for Patrick and James. (*Id.* ¶¶ 136–42; July Family Court Order at 1). Patrick and James were placed with Tom McCoy, their father. (July Family Court Order at 1). Alisa did not have custody of Patrick and James between July 2017 and June 22, 2018, when the family court ordered them returned to her custody. (Am. Compl. ¶¶ 136, 152). On January 25, 2018, Alisa replaced her court-appointed counsel Schwartz with private attorney Ralph Porzio. (*Id.* ¶ 157).

Beginning in 2019, Plaintiffs began to appeal the family court decisions.  On December 18, 2018, there was a hearing on the placement of Alisa on the New York State Central Registry for Abuse and Neglect of Children ("SCR").  (*Id.* ¶ 192).  The SCR is a division of OCFS that collects reports of suspected child abuse or neglect.  *See generally* N.Y. Soc. Serv. Law § 422.  The administrative hearing regarding Alisa's placement on the SCR resulted in her name remaining on the registry.  (Am. Compl. ¶ 192).  Alisa then filed an Article 78 appeal of that decision before the Appellate Division on September 27, 2019.  (*Id.* ¶ 203).

Separately, on April 21, 2021, the Richmond County Family Court issued an order that vacated all prior orders against Alisa.  (*Id.* ¶¶ 26–28).  On November 18, 2021, Alisa's attorney, Richard J. Flanagan, sent a letter to a former OCFS official, Defendant Kelleher-Donnaruma, requesting that Alisa's SCR records be "expunged *nunc pro tunc*." (Letter dated Nov. 18, 2021 ("Nov. 2021 Letter"), attached to Am. Compl. at 88–91). Alisa made the request alleging she was denied an employment opportunity with a District Attorney's ("D.A.'s") office because of her name's presence on the SCR.  (*Id.*; *see also* Am. Compl. ¶¶ 187, 236, 239, 316).  Kelleher-Donnaruma denied the request to expunge her SCR records.  (Nov. 2021 Letter at 88).

Plaintiffs filed the original Complaint on April 21, 2023.  (Compl. dated Apr. 21, 2023, Dkt. No. 1).  The operative complaint, the Amended Complaint, was filed on August 23, 2023.  (Am. Compl.).  The City Defendants, State Defendants, and Schwartz all separately moved to dismiss the Amended Complaint on different grounds.  Plaintiffs assert the following § 1983 claims: (1) unreasonable search and seizure under the Fourth Amendment; (2) violation of substantive due process under the Fourteenth Amendment; (3) violation of procedural due process under the Fourteenth Amendment;

5

(4) legal malpractice against Schwartz; (5) violation of the right to a fair trial under the Fifth Amendment; and (6) a *Monell* claim against the City.  (*See* Am. Compl.).

<u>DISCUSSION</u>

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party]").  "*Pro se* complaints are held to less stringent standards than those drafted by attorneys, and [the Court is] required to read the plaintiff's *pro se* complaint liberally, interpreting it as raising the strongest arguments it suggests." *Johnson v. Darby*, 142 F. Supp. 3d 275, 277 (E.D.N.Y. 2015), *aff'd sub nom. Johnson v. Dobry*, 660 F. App'x 69, 72 (2d Cir. 2016).

Once the facts are construed in the light most favorable to the non-moving parties to avoid dismissal, there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)).  "[A] district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.  Of course, it may

also consider matters of which judicial notice may be taken under Fed. R. Evid. 201."
*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (internal citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading Co.*, No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249, at *3 (Feb. 23, 2018).

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (same). "This is particularly so when the *pro se* plaintiff alleges that [her] civil rights have been violated." *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Nonetheless, even *pro se* complaints must contain sufficient factual allegations to allege a plausible claim. *Hogan*, 738 F.3d at 515; *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

I.    Alisa McCoy's Claims

The Court addresses Alisa McCoy's claims against each set of Defendants in turn.

a.    Against the State Defendants

The State Defendants move to dismiss Alisa's claims under § 1983 on multiple grounds. (Mem. of Law in Supp. of State Defs.' Mot. to Dismiss ("State Defs.' Mem. of Law"), Dkt. No. 32). In the end, Alisa's claims against OCFS and SCR should all be dismissed because they are barred by sovereign immunity. The Court, therefore, need not reach the other grounds asserted for dismissal of the claims against them. However, Alisa's claims against Kelleher-Donnaruma in her individual capacity should survive.

i.    OCFS and SCR

"Stated as simply as possible, the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the state's Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original) (quotations omitted). Sovereign immunity is not limited to the state itself; it also precludes suits against state agencies and entities that are considered "arms of the state." *T.W. v. N.Y. State Bd. of Law Examiners*, No. 22-1661, 2024 WL 3463499, at *3 (2d Cir. July 19, 2024). For Eleventh Amendment purposes, "the Second Circuit has explicitly concluded OCFS is entitled to immunity," and numerous district courts have concluded the same. *See Kisembo v. NYS Off. of Child. & Fam. Servs.*, 285

F. Supp. 3d 509, 519–20 (N.D.N.Y. 2018) (citing *Hale v. Mann*, 219 F.3d 61, 73 (2d Cir. 2000)) (collecting cases).  The same analysis precludes suit against OCFS here, and against SCR, which is also a state agency.[2]

The Court thus recommends that OCFS's and the SCR's motion to dismiss be granted in full as to Alisa McCoy's claims against them, and that the claims be dismissed without prejudice.  *See, e.g.*, *Rashid v. O'Neill-Levy*, No. 23-CV-2670, 2024 WL 687289, at *4 (S.D.N.Y. Feb. 20, 2024) ("Because each of [Plaintiff]'s claims is dismissed for lack of subject matter jurisdiction . . . as barred by the Eleventh Amendment . . . these dismissals are without prejudice.").

ii.    Kelleher-Donnaruma

Alisa also asserts claims against Kelleher-Donnaruma for monetary damages. (Am. Compl. ¶ 19).  Although her monetary claims against Kelleher-Donnaruma in her official capacity are barred by sovereign immunity, *see supra* at p. 8, Alisa may still assert a monetary claim against Kelleher-Donnaruma in her individual capacity.  *See*

---

[2] There are three exceptions to sovereign immunity: (1) if a state has waived its Eleventh Amendment defense; (2) if Congress has abrogated the sovereign immunity of a state, pursuant to section 5 of the Fourteenth Amendment, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); and (3) if the plaintiff only seeks prospective injunctive relief against a state official under *Ex parte Young*, 209 U.S. 123 (1908).  *See Deadwiley v. N.Y. State Off. of Child. & Fam. Servs.*, 97 F. Supp. 3d 110, 115 (E.D.N.Y. 2015); *accord T.W.*, 2024 WL 3463499, at *12.  "New York has not waived its sovereign immunity in federal court from suits for damages" under § 1983, nor has Congress abrogated its immunity.  *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019).  And, despite Plaintiffs' appeal to *Ex parte Young*, (*see* Am. Compl. ¶ 321), the exception does not apply.  Only one defendant (Kelleher-Donnaruma) is a state official, and she is a *former* OCFS official, making prospective injunctive relief against her impossible.  (State Defs.' Mem. of Law at 15–16 n.6); *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a[n] . . . inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  (quotations omitted) (third alteration in original)).

*Dwyer v. Regan*, 777 F.2d 825, 835 (2d Cir. 1985) ("[S]uits for monetary awards from a state official in his individual capacity or suits for prospective injunctive relief are not deemed suits against the state and hence are not barred."), *modified*, 793 F.2d 457 (2d Cir. 1986); *see also State Emp. Bargaining Coal. v. Rowland*, 718 F.3d 126, 137 (2d Cir. 2013) ("Where a complaint specifically seeks damages from defendants in their individual capacities, . . . [it] does not make the state the real party in interest." (quotations and alterations omitted)).

The basis for Alisa's claim against Kelleher-Donnaruma is the letter sent to her then-attorney from Kelleher-Donnaruma on November 18, 2021 (the "November 2021 Letter"). The November 2021 Letter responds to a request by Alisa's attorney to "have any [SCR] records related to [Alisa] expunged *nunc pro tunc*." (*See* Nov. 2021 Letter at 88). The letter summarizes that Alisa "made an initial request for an administrative appeal on January 4, 2018, challenging multiple indicated reports [on the SCR]." (*Id.* at 89). "The outcome of [Alisa's] administrative appeal was that all reports were determined (at both administrative review and at fair hearing) to be supported by a fair preponderance of the evidence and therefore they remained indicated." (*Id.*). That hearing took place on December 18, 2018, and the decision was rendered on May 29, 2019. (Am. Compl. ¶¶ 192–93). The December 2018 hearing produced the initial determination that led to Alisa's name remaining on the SCR. The Amended Complaint makes no allegations that Kelleher-Donnaruma was involved in that hearing or the subsequent decision related to it. But in the November 2021 Letter, Kelleher-Donnaruma denies Alisa's request for her SCR records to be expunged. (Nov. 2021 Letter at 88 ("I regret to inform you that in accordance with SSL § 442, your client's request for expungement *nunc pro tunc* cannot be granted at this time.")).

Alisa argues that, because of this letter and Kelleher-Donnaruma's refusal to expunge her SCR records, Alisa lost employment opportunities. (*See* Am. Compl. ¶¶ 187, 236, 239, 316; Pls.' Resp. in Opp'n to Def. Kelleher-Donnaruma's Mot. to Dismiss ("Pls.' Suppl. Opp'n"), Dkt. No. 61 at 2–3). Alisa alleges that she applied for a job in a D.A.'s office and lost that employment opportunity because of her name's presence on the SCR. (*See* Nov. 2021 Letter at 88; Pls.' Suppl. Opp'n at 3).

Alisa's claim against Kelleher-Donnaruma is most accurately read as a "stigma-plus" claim, (*e.g.*, Am. Compl. ¶ 236; Pls.' Suppl. Opp'n at 2–3, 5), which is a subset of procedural due process claims under the Fourteenth Amendment. *See Grullon v. Admin. for Child.'s Servs.*, No. 18-CV-3129, 2021 WL 981848, at *8 (S.D.N.Y. Mar. 16, 2021). "'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). A plaintiff may assert a stigma-plus claim when her name's presence on the SCR "did not simply defame her but also 'place[d] a tangible burden on her employment prospects.'" *Grullon*, 2021 WL 981848, at *8 (alteration in original) (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

Although the State Defendants argue in a conclusory way that Plaintiffs have failed to state a claim against Kelleher-Donnaruma, (State Defs.' Suppl. Mot. to Dismiss Def. Kelleher-Donnaruma ("State Defs.' Suppl. Mem. of Law"), Dkt. No. 58 at 3), they do not make any arguments disputing the merits of Alisa's stigma-plus claim. They only argue that Alisa does not have Article III standing to assert a claim against Kelleher-Donnaruma. (*Id.*). But as explained above, *see supra* at p. 10, the November 2021 Letter constituted an independent denial of Alisa's request to expunge her SCR records,

and thus, that denial caused her an independent injury that was traceable to Kelleher-Donnaruma's decision.  Alisa's stigma-plus claim against Kelleher-Donnaruma survives, and the Court recommends that the State Defendants' motion to dismiss be denied on this claim.  *See, e.g.*, *Finch v. N.Y. State Off. of Child. & Fam. Servs.*, 499 F. Supp. 2d 521, 534 (S.D.N.Y. 2007) (denying motion to dismiss on plaintiff's stigma-plus claim based on the delay in scheduling administrative hearings about his name's inclusion on SCR).

       b.   <u>Against the City Defendants</u>

Alisa's claims against all of the City Defendants—including the City, ACS, Simmons, Palumbo, Hansell, the NYPD, and NYDOE—should be dismissed as time-barred.

Section 1983 does not set forth a specific statute of limitations.  *Owens v. Okure*, 488 U.S. 235, 239 (1989).  The Supreme Court has directed lower courts to "apply the statute of limitations for personal injury actions under state law."  *Hogan*, 738 F.3d at 517 (citing *Owens*, 488 U.S. at 249–51).  As such, section "1983 actions filed in New York are therefore subject to a three-year statute of limitations."  *Id.*; *accord Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015).  As to when the limitations period begins to run, that is "a question of federal law, conforming in general to common-law tort principles."  *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quotations omitted).  And that time accrues "when the plaintiff knows or has reason to know of the injury which is the basis of [the] action."  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

Alisa's claims against the City Defendants arise out of incidents on two dates: (1) the filing of the Neglect Petitions by Simmons, and the forcible removal of Patrick

and James by the NYPD and ACS, on March 8, 2017, (Am. Compl. ¶¶ 91–105); and (2) the subsequent removal of Patrick and James by ACS on July 7, 2017, (*id.* ¶¶ 119, 136, 266–68). In this context, "[c]ourts have held . . . that the limitations period begins to run on the date the children were removed." *Sevilla v. Perez*, No. 15-CV-3528, 2016 WL 5372792, at *3 (E.D.N.Y. Sept. 26, 2016); *see also Skillings v. City of New York*, No. 21-CV-3034, 2023 WL 8531493, at *9 (E.D.N.Y. Jan. 19, 2023) (collecting cases), *report and recommendation adopted*, Order (Mar. 20, 2023). The two removals of her children are the principal injuries that Alisa asserts, and she, by admission, had knowledge of these injuries on March 8 and July 7 because she was present for those removals. (*See* Am. Compl. ¶¶ 97–102; *id.* ¶ 101 (indicating that Simmons handed Alisa the Neglect Petitions and TRO during the removal on March 8); *id.* ¶¶ 136–41 (indicating that Alisa was at family court during the second removal of the children on July 7)).

Under the three-year statute of limitations, Alisa had until March 8, 2020 to bring claims arising out of the first removal. For her claims arising out of the second removal, ordinarily, the limitations would have run on July 7, 2020. But on March 20, 2020, the Governor of New York tolled the statutes of limitation for all legal actions, including civil cases in federal court, due to the COVID-19 pandemic. N.Y. Exec. Order 202.8 (Mar. 20, 2020); *see Rivera v. City of New York*, No. 20-CV-9968, 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022). The tolling period lasted from March 20, 2020 to November 3, 2020. *Rivera*, 2022 WL 1523165, at *4. Thus, Alisa's claims arising out of the second removal on March 8, 2017 were time-barred as of February 21, 2021. The original complaint was filed on April 21, 2023. (Dkt. No. 1). This is well after the statute of limitations ran on any of her claims against the City Defendants.

13

Alisa argues that her claims actually accrued on April 21, 2021, the date that the Richmond County Family Court issued an order vacating all prior orders against her. (Am. Compl. ¶¶ 26–28; Pls.' Opp'n to Defs.' Mots. to Dismiss ("Pls.' Opp'n"), Dkt. No. 43 ¶ 11). In support of this argument, she cites the Supreme Court's decision in *Heck v. Humphrey* for the proposition that wrongful conviction and malicious prosecution claims under § 1983 do not accrue until the conviction or sentence has been invalidated. 512 U.S. 477, 489–90 (1994). To take advantage of this accrual rule, Alisa would have to be able to state a malicious prosecution claim. *See id.* But she cannot.[3]

To state a claim for malicious prosecution under § 1983, a plaintiff "must plead both 'a violation of his rights under the Fourth Amendment' and 'the elements of a malicious prosecution claim under state law.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). In New York, "a malicious-prosecution claim requires a plaintiff to show '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions.'" *Id.* at 163–64 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Probable cause is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable [person] in the belief that he has lawful grounds for prosecuting the defendant in the manner

---

[3] "It is not settled in the Second Circuit whether the initiation of child neglect proceedings can give rise to a malicious prosecution claim." *Grullon*, 2021 WL 981848, at *10 (collecting cases). The Court assumes that, but does not decide whether, child neglect proceedings are analogous to one for malicious prosecution.

complained of." *Grullon*, 2021 WL 981848, at *11 (quotations omitted). "Although probable cause is a more exacting standard than the standard required to support an arrest . . . when the underlying action is civil in nature, the want of probable cause must be patent." *V.A. v. City of New York*, No. 22-CV-773, 2023 WL 6254790, at *8 (S.D.N.Y. Sept. 26, 2023) (quotations and alteration omitted). Where probable cause has been shown through a "temporary injunction or similar judicial recognition of the merit of the underlying case," to have the claim survive, plaintiffs must make some showing that there has been misrepresentation, falsification, or otherwise bad faith by witnesses or law enforcement officers. *See id.*

The March Family Court Order removed Patrick and James from Alisa's custody and entered a full stay-away order of protection on their behalf against Alisa. The family court determined that the Neglect Petitions submitted to the court by ACS, which detailed the allegations against Alisa, demonstrated "good cause" for the removal. (March Family Court Order at 3 ("A petition . . . having been filed on March 08, 2017 in this Court and good cause having been shown . . . [i]t is hereby ordered that Alisa McCoy . . . [s]tay away from: James McCoy . . . and Patrick McCoy[.]")). In July, the family court entered another removal order and order of protection against Alisa, finding that Alisa was "unable to safely care for the child[ren]." (July Family Court Order at 4; *see id.* at 1 (relying upon "all prior papers and proceedings heretofore had herein" in issuing order)). These court orders "establish[] a presumption of probable cause." *V.A.*, 2023 WL 6254790, at *8.

Although Alisa argues Simmons and other City Defendants made false statements to obtain these court orders, (*e.g.*, Am. Compl. ¶¶ 92–93, 258, 263, 299), there was nevertheless probable cause, independent of those allegedly false statements. The

Amended Complaint itself alleges that ACS received a report from Patrick's and James's school, in which school personnel alleged that Alisa "presented herself at the school as delusional, and making statements that do not make sense," and this was added to the Neglect Petitions, (Neglect Petitions at 6); ACS also received an anonymous tip that Alisa had been psychiatrically hospitalized in Washington, D.C., the week prior to Simmons's visit to the McCoy home, (*id.*), and that Patrick and James had been left alone and unsupervised during that time, (*id.* at 6–7). Plaintiffs do not dispute the truth of these statements. (*See* Am. Compl. ¶ 70 (acknowledging that Alisa was "upset and became vocal" at school personnel); *id.* ¶ 300 (only disputing that Alisa was arrested during her hospitalization in Washington D.C., which was not alleged in the Neglect Petitions)). And these allegations can be the basis of probable cause for prosecution even if there is, among these statements, allegedly false information. *See Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (agreeing with district court that "there was probable cause to prosecute [plaintiff], even without" the fabricated evidence, and thus, "because the existence of probable cause is a complete defense to a claim of malicious prosecution . . . the district court was correct to dismiss [plaintiff's] claim" (quotations omitted)); *e.g.*, *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 391 (E.D.N.Y. 2013) ("[E]ven where plaintiff alleges, as here, that the malicious prosecution is based on fabricated evidence, the existence of probable cause independent of the fabricated evidence is a defense to that claim." (quotations omitted)), *aff'd*, 650 F. App'x 801, 802 (2d Cir. 2016); *Chan*, 2024 WL 1452381, at *4–*5, *7 (denying plaintiff leave to amend to add a malicious prosecution claim where independent probable cause

existed).[4]  In sum, the presence of probable cause bars any malicious prosecution claim. *Johnson v. City of New York*, No. 20-CV-3083, 2022 WL 6564685, at \*12–\*13 (S.D.N.Y. Aug. 12, 2022) (dismissing plaintiff's malicious prosecution claim against ACS in neglect proceeding because of presence of probable cause), *report and recommendation adopted*, 2022 WL 4364879, at \*7 (Sept. 21, 2022), *aff'd*, 22-CV-2096, 2023 WL 3607219, at \*3 (2d Cir. May 24, 2023).

To conclude, Alisa's claims against the City Defendants are time-barred.  And even if the *Heck* deferral rule were to apply to a potential malicious prosecution claim, the City Defendants had probable cause to file the Neglect Petitions, thus defeating such a claim.  Alisa's claims against the City Defendants should be dismissed in their entirety.[5]

c.    Against Defendant Schwartz

Defendant Schwartz moves to dismiss Alisa's claim of legal malpractice because her claim is barred by the statute of limitations.  (Mem. of Law in Supp. of Schwartz's Mot. to Dismiss, Dkt. No. 35 at 6–7).[6]  The Court agrees.

---

[4] Of course, even if the malicious prosecution claim fails, the use of any fabricated evidence can give rise to liability.  *See infra* at pp. 25–27.

[5] Alisa's *Monell* claim against the City Defendants should also be dismissed since there is no underlying constitutional violation asserted.  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

[6] To the extent that Alisa brings a § 1983 claim against Schwartz for ineffective assistance of counsel under the Sixth Amendment, (*see* Am. Compl. ¶¶ 272, 290, 296; Pls.' Opp'n ¶¶ 138, 140), such a claim fails because Schwartz, as court-appointed counsel, did not act under the color of state law.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[W]e decide . . . that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *cf. Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)

The statute of limitations for a legal malpractice claim under New York law is three years from the date of the malpractice. N.Y. C.P.L.R. § 214(6); *see, e.g.*, *Mohamed v. Donald J. Nolan, Ltd.*, 967 F. Supp. 2d 647, 653 (E.D.N.Y. 2013), *aff'd sub nom. Mohamed v. Nolan Law Grp.*, 574 F. App'x 45, 47 (2d Cir. 2014). The Amended Complaint alleges that Schwartz was appointed to represent Alisa on March 24, 2017, and he ceased representing her on January 25, 2018. (Am. Compl. ¶¶ 120, 157, 271). Alisa acknowledges she replaced Schwartz with private counsel Ralph Porzio on January 25, 2018. (*Id.* ¶ 157). Thus, the latest possible date for Alisa's legal malpractice claim to have accrued was January 25, 2018. *Page v. Ellenoff Grossman & Schole LLP*, No. 22-CV-4453, 2023 WL 4841916, at *2 (S.D.N.Y. July 28, 2023) (noting plaintiff's legal malpractice claim accrues when the alleged malpractice is committed, not when discovered by the client). Her statute of limitations therefore ran on January 25, 2021, more than two years before the original complaint was filed in this case.

As such, the Court recommends that Alisa's legal malpractice claim against Schwartz be dismissed as time-barred.[7]

II.    Patrick and James McCoy's Claims

    a.    Against the State Defendants

Patrick and James also assert claims against OCFS and SCR, and as explained, none of the exceptions to Eleventh Amendment immunity apply. *See supra* at pp. 8–9. The Court recommends that their claims against State Defendants be dismissed.

---

(holding that a guardian ad litem appointed in a child custody proceeding is not a state actor under § 1983).

[7] Plaintiffs concede that Patrick and James do not assert any claims against Schwartz. (Pls.' Opp'n ¶¶ 175–76). Thus, to the extent that any claims remain against Schwartz, they should be dismissed.

Furthermore, Patrick's and James's monetary claim against Kelleher-Donnaruma in her personal capacity fail because they do not have Article III standing to assert such a claim against her.  Any injury suffered from her decision on the SCR placement was suffered by Alisa, not Patrick or James, whose names were not on the registry.  (*See* State Defs.' Suppl. Mem. of Law at 3).

  b. <u>Against the City Defendants</u>

  The City Defendants move to dismiss Patrick's and James's claims against them on several grounds: (1) that their claims are time-barred; (2) that Plaintiffs fail to state a claim under Rule 12(b)(6); (3) that Simmons and Palumbo are entitled to qualified immunity; (4) that ACS and the NYPD are "non-suable entities"; and (5) that their claims cannot succeed against Hansell because of his lack of personal involvement.  (*See* Mem. of Law in Supp. of City Defs.' Mot. to Dismiss ("City Defs.' Mem. of Law"), Dkt. No. 38-1 at 12).  As explained below, Patrick's and James's claims should only be dismissed in part.

  For § 1983 actions, a court borrows the forum state's statute of limitations and its rules for tolling.  *Pearl*, 296 F.3d at 80 (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484–86 (1980)).  New York law authorizes the automatic tolling of all cause of actions while the plaintiff is a minor (under the age of 18), after which, the plaintiff has three years from the date of their age of majority to commence the action.  N.Y. C.P.L.R. § 208(a); *see Perez v. County of Nassau*, 294 F. Supp. 2d 386, 389 (E.D.N.Y. 2003) (holding that plaintiff's § 1983 action was timely because of infant tolling rule).

  Patrick and James were minors during the events alleged in the Amended Complaint, (*see* Am. Compl. ¶¶ 5–6, 18, 64), having been born on April 17, 2003.  (*See* Family Ct. Order of Dismissal dated Apr. 21, 2021 ("Dismissal Order"), attached to Am.

Compl. at 87).  Patrick and James had three years from April 17, 2021—the date they turned eighteen—to assert their causes of action.  *See, e.g.*, *Perez*, 294 F. Supp. 2d at 389.  The original complaint was filed on April 21, 2023, within the tolled statute of limitations.  (Dkt. No. 1).  Thus, Patrick's and James's claims against the City Defendants, unlike Alisa's, are timely.

However, some of the City Defendants must be dismissed from the case on other grounds.  *First*, as the City Defendants correctly point out, ACS and the NYPD are non-suable entities.  (City Defs.' Mem. of Law at 22–23).  Claims against New York City agencies must, with some exceptions, "be brought in the name of the city of New York and not in that of any agency."  N.Y. City Charter § 396.  Patrick and James have asserted claims against the City of New York, but because ACS and the NYPD are not suable entities, they must be dismissed.  *See, e.g.*, *Iosilevich v. N.Y.C. Admin. for Child.'s Servs.*, No. 21-CV-466, 2021 WL 3472647, at *3 (E.D.N.Y. Aug. 6, 2021) (dismissing claims against ACS); *Fraser v. City of New York*, No. 20-CV-5741, 2022 WL 3045524, at *2 (E.D.N.Y. Aug. 1, 2022) (dismissing claims against NYPD); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (affirming dismissal of claims against NYPD because it is a non-suable entity).

*Second*, Patrick's and James's claims against Hansell, the former ACS commissioner, must be dismissed for lack of personal involvement.  For any § 1983 claim, a plaintiff must plausibly allege that each individual defendant had personal involvement in the alleged constitutional violation.  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient[.]"  *Johnson*, 2022 WL 6564685, at *14 (alteration in original) (quotations omitted).  Plaintiffs only

make a handful of allegations regarding Hansell in the Amended Complaint: they allege that he testified at a City Hall hearing on October 31, 2019, a hearing at which Alisa also testified, (Am. Compl. ¶¶ 159, 212), and that Hansell was present at a State Assembly hearing on October 21, 2021, where Alisa also testified, (*id.* ¶ 214). They also allege that Hansell "swore under oath to the truth of the statements made." (*Id.* ¶ 301). There is no indication that Hansell's involvement in these hearings were related to Plaintiffs' removal or injuries in any way (and could not be, since they occurred years after the fact). Plaintiffs argue that Hansell's signature on the Neglect Petitions points to his personal involvement. (*Id.* ¶ 301; Neglect Petitions at 5). But the Neglect Petitions were filed by Simmons, the ACS caseworker who swore to the truth of the statements therein. (Neglect Petitions at 5). Hansell's position as the commissioner and Simmons's ultimate supervisor, standing alone, is not sufficient to plausibly show his personal involvement in the alleged constitutional violations, and thus, he should be dismissed. *See, e.g.*, *Ragland v. Coulter*, No. 20-CV-2002, 2021 WL 4430271, at *4 (E.D.N.Y. June 25, 2021) (dismissing Hansell for lack of personal involvement), *report and recommendation adopted*, 2021 WL 4406014, at *1 (Sept. 27, 2021); *Johnson*, 2022 WL 6564685, at *14 (same, and noting that position as supervisor, standing alone, is insufficient to establish personal involvement).

The City Defendants who remain as to Patrick's and James's claims are the City, Simmons and Palumbo (ACS caseworkers), and the NYDOE (the "Remaining City Defendants"). Reviewing the Amended Complaint and construing its allegations liberally, Patrick's and James's claims can be distilled into three categories:

unreasonable search and seizure under the Fourth Amendment;[8] violation of

substantive due process under the Fourteenth Amendment;[9] violation of procedural due

process under the Fourteenth Amendment;[10] and a fabricated evidence claim under the

Fifth and Fourteenth Amendments.[11]

        i.    <u>Unreasonable Search and Seizure</u>

"When a child is taken into state custody, his or her person is 'seized' for Fourth

Amendment purposes.  The child may therefore assert a claim under the Fourth

Amendment that the seizure of his or her person was 'unreasonable.'" *Southerland v.

City of New York*, 680 F.3d 127, 143 (2d Cir. 2012) (quoting U.S. Const. amend. IV).

When the government removes a child pursuant to a valid family court order, the family

court order operates as the equivalent of a warrant in the criminal context.  *Nicholson v.

Scoppetta*, 344 F.3d 154, 176 (2d Cir. 2003).  A removal of children pursuant to a valid

family court order, thus, must be supported by a finding of probable cause.  *See id.*

    As explained above, the March and July Family Court Orders that removed

Patrick and James were supported by probable cause.  *See supra* at pp. 15–17.  And

---

[8] The First and Seventh Claims allege unreasonable search and seizure during Patrick's and James's removal from Alisa's custody on March 8, 2017.  (Am. Compl. ¶¶ 220–27, 306–13).  The Ninth and Tenth Claims relate to alleged interviews and examinations of Patrick and James—by the NYDOE and emergency room doctors—conducted without parental consent.  (*Id.* ¶¶ 323–24, 327–28).

[9] Plaintiffs' Third Claim alleges a violation of Patrick's and James's substantive due process rights, challenging the fact of the removal itself.  (Am. Compl. ¶¶ 258–61).

[10] The Fourth Claim alleges that the City Defendants failed to provide Patrick and James with an adequate post-deprivation hearing.  (Am. Compl. ¶ 265).

[11] Plaintiffs' Sixth Claim alleges that Simmons intentionally falsified evidence in the Neglect Petitions, a claim which most closely resembles a fabricated evidence claim under the Fifth and Fourteenth Amendments.  (Am. Compl. ¶¶ 298–300).

there are no allegations that would vitiate the probable cause.  Accordingly, Patrick's and James's Fourth Amendment claim against the Remaining City Defendants should be dismissed.  *See, e.g.*, *Grullon*, 2021 WL 981848, at *10 (dismissing Fourth Amendment claim where there were no well-pled allegations of any false statements or that ACS knew of false statements).

        ii.      <u>Substantive Due Process</u>

Patrick and James assert a violation of their substantive due process rights for being removed from Alisa's custody.  (Am. Compl. ¶¶ 257–61).  "For child removal claims brought by the child, [the Second Circuit] ha[s] concluded that the Constitution provides an alternative, more specific source of protection than substantive due process" in the Fourth Amendment.  *Southerland*, 680 F.3d at 142–43 ("Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."(quotations omitted)); *see, e.g.*, *V.A.*, 2023 WL 6254790, at *10 n.18; *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 549 n.17 (E.D.N.Y. 2013).  Thus, the Court recommends that any substantive due process claim asserted by Patrick and James to be dismissed, since it is really a Fourth Amendment claim, which the Court concludes should be dismissed.[12]

---

       [12] To be clear, Alisa could have asserted a substantive due process claim, but that claim is time-barred.  *Schweitzer*, 935 F. Supp. 2d at 549 ("Parents have a 'substantive right under the Due Process Clause to remain together [with their children] without the coercive interference of the awesome power of the state.'" (alteration in original) (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999))).

iii.  <u>Procedural Due Process</u>

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022) (quotations omitted).  Children have a "constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily family association." *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000) (alteration and quotations omitted).  "[E]xcept in emergency circumstances, judicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected." *Southerland*, 680 F.3d at 142.  "[A] court order is required to remove a child from his or her parent's home without exigent circumstances." *Mortimer v. City of New York*, No. 15-CV-7186, 2018 WL 1605982, at *18 (S.D.N.Y. Mar. 19, 2018) (citing *Southerland*, 680 F.3d at 149).

ACS obtained an *ex parte* court order from the Richmond County Family Court before removing Patrick and James from Alisa's custody on March 8, 2017.  (*See* Am. Compl. ¶¶ 97, 101; March Family Court Order at 1).  And after Patrick and James were removed, they received a prompt post-deprivation hearing, in which the family court vacated the prior order and directed them to be returned to Alisa's custody.  (Am. Compl. ¶¶ 172–74).  After this point, Alisa, Patrick, and James all had court-appointed counsel, (*id.* ¶¶ 120–21), and according to the Amended Complaint, they were afforded notice and participation in the removal proceedings.  Patrick and James cannot plausibly allege a procedural due process violation, in a case where their removal was effected pursuant to an *ex parte* court order supported by probable cause, and they had a post-deprivation hearing pursuant to which they were returned to their mother's

custody.  *E.g.*, *Graham v. City of New York*, 869 F. Supp. 2d 337, 350 (E.D.N.Y. 2012) (dismissing procedural due process claim where plaintiff was heard at family court hearing and represented by court-appointed counsel).  The Court recommends that the Remaining City Defendants' motion to dismiss be granted on this claim.

> iv.    Fabricated Evidence Claim

The Due Process Clause of the Fifth Amendment guarantees a criminal defendant's "right to a fair trial," and that "right is violated 'when a police officer creates false information likely to influence a jury's decision.'"  *Frost*, 980 F.3d at 244 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  As a result, a plaintiff may utilize § 1983 to "sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor."  *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) (alteration in original) (quotations omitted).  To state such a claim, a plaintiff must allege that "(1) an investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result."  *Id.* at 128 (alterations omitted) (quoting *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021)).  But to bring a fabricated evidence claim, the plaintiff must also show that his criminal charges resulted in a "favorable termination."  *McDonough*, 139 S. Ct. at 2156–57.

Assuming that Patrick and James could bring such a claim, *see Grullon*, 2021 WL 981848, at *10–*11; *see, e.g.*, *Cook v. City of New York*, 243 F. Supp. 3d 332, 353 (E.D.N.Y. 2017) (allowing fabricated evidence claim against ACS to proceed at motion to

dismiss stage), they have stated a fabricated evidence claim under the Fifth and Fourteenth Amendments against Simmons alone, sufficient to survive a motion to dismiss.  The Amended Complaint contains multiple conclusory allegations that Simmons falsified information in the Neglect Petitions.  (*See* Am. Compl. ¶¶ 92–93, 105).  But Plaintiffs point to two pieces of specific, allegedly fabricated information: (1) Simmons's false allegation that Patrick and James were left alone and unsupervised on February 14, 2017, (*id.* ¶ 84); and (2) Simmons's false statements "that Patrick and James allegedly made to her in the Affidavit with the Neglect Petition."  (*Id.* ¶ 299).  The Neglect Petitions include sworn testimony by Simmons that Patrick told her on February 24, 2017 that Alisa "act[ed] weird," that her "mood change[d] often," and that she had "a little bit of a mental health problem."  (Neglect Petitions at 6–7).  James also allegedly told Simmons that on February 14, 2017, he and Patrick could not find their mother until approximately 8:30 P.M.  (*Id.* at 7).  These are alleged to have been false statements.  (Am. Compl. ¶ 299).

Patrick and James have successfully alleged that Simmons was an investigating official.  (Am. Compl. ¶¶ 9, 78–81, 90).  They also alleged that she fabricated information, and that that information was material: the statements that Patrick and James made to Simmons in the Neglect Petitions were no doubt important to ACS's case.  *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) ("[A]*ny* information fabricated by an officer can serve as the basis of a claim for a denial of the right to a fair trial." (emphasis added)).  At this stage, and interpreting the Amended Complaint liberally for *pro se* plaintiffs, they have alleged the fabrication with enough specificity to avoid dismissal.  *See Barnes*, 68 F.4th at 129 (upholding plaintiff's allegation of "fabrication" at motion to dismiss stage because "before discovery, it is

26

unclear what other facts [plaintiff] could be expected to allege in order to show that Defendants' conduct was knowing, as opposed to mistaken").  They have also sufficiently alleged that the fabricated information was forwarded to "prosecutors" (in this case, via the Neglect Petitions), (*see id.* ¶¶ 91–93).  And Patrick and James suffered a deprivation of liberty when they were removed from their custodial parents' home. *See, e.g.*, *Cook*, 243 F. Supp. 3d at 353 (allowing infant-plaintiffs to amend their complaint with a fabricated evidence claim against ACS); *see also Kia P.*, 235 F.3d at 759 (recognizing that "children have a . . . constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily family association" (quotations and alteration omitted)).

Thus, the Court recommends that the Remaining City Defendants' motion to dismiss be denied as to Patrick's and James's fabricated evidence claim against Simmons.[13]

    v.    *Monell* Liability

Plaintiffs allege that ACS has a custom or policy of "making allegations of mental health issues" in order to remove children from their parents.  (Am. Compl. ¶ 331). Under *Monell*, a municipality may be held liable under § 1983 if the deprivation of the

---

[13] The City Defendants (and only the City Defendants) also move to dismiss all claims against Simmons on the basis of qualified immunity.  (City Defs.' Mem. of Law at 20–22).  Although the defense of qualified immunity may be asserted at the motion to dismiss stage, "such a defense faces a formidable hurdle . . . and is usually not successful." *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022) (alteration in original) (quotations omitted).  Thus, "as a practical matter, it is generally premature to address the defense of qualified immunity in a motion to dismiss." *Perez v. Ponte*, 236 F. Supp. 3d 590, 612 n.7 (E.D.N.Y. 2017) (quotations and alteration omitted), *report and recommendation adopted*, 2017 WL 1050109, at *1 (Mar. 15, 2017); *see, e.g.*, *Santander Consumer USA, Inc. v. County of Suffolk*, No. 23-CV-5308, 2023 WL 7017082, at *3 (E.D.N.Y. Oct. 25, 2023) (denying motion to dismiss on qualified immunity grounds as premature).

plaintiff's constitutional rights "is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Plaintiffs' *Monell* claim rests upon Simmons' allegedly fabricated statements in the Neglect Petitions: the Amended Complaint alleges that ACS workers have a custom of fabricating the mental illnesses of parents because "ACS knows that allegations of mental health will permit it to have access to medical records."  (Am. Compl. ¶ 331). This is sufficient for *Monell* purposes.  The Court recommends denying the City's motion to dismiss Patrick and James's *Monell* claim.  *See, e.g.*, *Buari v. City of New York*, 530 F. Supp. 3d 356, 404 (S.D.N.Y. 2021) (denying motion to dismiss *pro se Monell* claim against officers for fabricating evidence); *Jeanty v. City of Utica*, No. 16-CV-966, 2017 WL 6408878, at *10 (N.D.N.Y. Aug. 18, 2017) (same, and collecting cases), *aff'd sub nom. Jeanty v. Cerminaro*, No. 21-1974, 2023 WL 325012, at *2–*3 (2d Cir. Jan. 20, 2023).

CONCLUSION

For the reasons explained above, the Court respectfully recommends that all of Alisa's claims in Amended Complaint, except for her claim against Kelleher-Donnaruma, be dismissed, that Patrick's and James's claims against the State Defendants and Schwartz be dismissed, and that Patrick's and James's Fourth Amendment and Fourteenth Amendment procedural and substantive due process claims be dismissed.  The only claims that the Court recommends remain, therefore, are Alisa's stigma-plus claim against Kelleher-Donnaruma, and Patrick's and James's fabricated evidence claim against Simmons and their *Monell* claim against the City.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections

within the specified time may waive the right to appeal any judgment or order entered

by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601,

604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates

as a waiver of any further judicial review of the magistrate[] [judge's] decision."

(quotations omitted)).

Defendants are directed to serve a copy of this Report and Recommendation on

Plaintiffs and file proof of such service on the docket.


SO ORDERED.

/s/*Sanket J. Bulsara*  August 9, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York