UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALISA MCCOY, PATRICK MCCOY, and
JAMES MCCOY,

               Plaintiffs,

        v.

ADMINISTRATION FOR CHILDREN'S
SERVICES *et al.*,

               Defendants.

**MEMORANDUM & ORDER**
23-CV-03019 (HG) (SJB)

**HECTOR GONZALEZ**, United States District Judge:

      In this action, which primarily concerns alleged constitutional violations under 42 U.S.C.

§ 1983, Magistrate Judge Bulsara has issued a report and recommendation ("R&R")

recommending that certain of Plaintiffs' claims be dismissed and others be permitted to proceed

to discovery.  All appearing Plaintiffs and Defendants have filed objections.  For the reasons

explained herein, the well-reasoned R&R, which thoroughly considers the many claims

presented by *pro se* Plaintiffs, is adopted with three modifications.

## BACKGROUND

      The Court assumes familiarity with the case's factual background.  *See* R&R at 2–6.[1]  As

relevant here, this case arises from the New York City Administration for Children's Services'

("ACS") investigation and subsequent removals of twin brothers Plaintiffs Patrick and James

McCoy, then minors, from the custody of their mother, Plaintiff Alisa McCoy, in 2017.[2]  The

three Plaintiffs, all proceeding *pro se*, initiated this action on April 21, 2023.  ECF No. 1.  After

Defendants filed pre-motion conference letters in anticipation of motions to dismiss, the Court

---

[1]      The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2]      For ease of reference, the Court refers to Plaintiffs by their first names.

granted Plaintiffs' request to amend, and an extension of time to do so.  *See* ECF Nos. 23, 27.

Plaintiffs filed the amended complaint ("AC") on August 23, 2023.  ECF No. 28.  The "State

Defendants" are the Office of Children and Family Services ("OCFS"), the New York State

Central Registry for Abuse and Neglect of Children ("SCR"), and Cassandra Kelleher-

Donnaruma.  R&R at 1.  The "City Defendants" are the City of New York, New York City

Policy Department ("NYPD"), New York City Department of Education ("DOE"), ACS, Sueann

Simmons, Victoria Palumbo, and David Hansell.  *Id.*  The AC also names as a defendant Alisa's

former Family Court-appointed lawyer Scott Schwartz.  *Id.*  "John Doe" Defendants are

unknown NYPD officers and other "John Doe" and "Jane Doe" Defendants are unknown City or

State employees.  AC ¶¶ 16, 18.  The State Defendants, City Defendants, and Schwartz all

moved to dismiss.  R&R at 2.  This Court referred all Defendants' motions to Judge Bulsara for

an R&R.  *See* Feb. 21, 2024, Text Order; May 20, 2024, Text Order.  On August 9, 2024, Judge

Bulsara issued the R&R.  The City and State Defendants sought an extension of time to file

objections to the R&R, which the Court partially granted as to all parties.  ECF No. 64; Aug. 16,

2024, Text Order.  On September 6, 2024, Kelleher-Donnaruma filed her objections to the R&R,

ECF No. 65, and the City Defendants filed their own objections on the same day, ECF No. 66.

On September 7, 2024, Plaintiffs filed their objections, ECF No. 67.[3]  Schwartz filed a response

to Plaintiffs' objections to the R&R on September 20, 2024.  ECF No. 70.  The City Defendants

did the same on September 21, 2024.  ECF No. 71.

---

[3]       Although the Court reminded the parties to comply with its Individual Practices, *see* Aug.
16, 2024, Text Order, Plaintiffs filed a sprawling 177 pages of objections with exhibits.
Although the Court is not required to excuse Plaintiffs' clear noncompliance with its rules, it
does so here in deference to their *pro se* status and in order to allow them to thoroughly present
their arguments.

## LEGAL STANDARD

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).[4]  For dispositive matters, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  For those portions of the R&R to which no proper objection is made, the Court need only satisfy itself that there is no "clear error on the face of the record."  *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 n.4 (2d Cir. 2022). When a party has not properly made objections, for instance, by making "objections that are merely perfunctory responses argued in an attempt to engage th[is Court] in a rehashing of the same arguments set forth in the original papers, it will not suffice to invoke de novo review." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009).  Accordingly, when considering objections that "merely re-assert arguments already submitted to the Magistrate Judge, this Court need only review the [R&R] for clear error."  *Id.*

## DISCUSSION

For the sake of clarity, the Court's analysis proceeds in the same general order as Judge Bulsara did in his R&R.  The Court addresses those portions of the R&R even arguably objected to or that otherwise inform this Court's analysis.  Because the Court has found no clear error in the remainder of the R&R, any portion not discussed below is fully adopted.

---

[4]     This framework for reviewing the R&R is adapted from *Stapleton v. DOE*, No. 22-cv-9351, 2024 WL 4182602, at *1 (S.D.N.Y. Sept. 13, 2024).  Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

I.      **State Defendants**

  A.      *OCFS and SCR*

Judge Bulsara recommends the dismissal of all Plaintiffs' claims against Defendants

OCFS and SCR on sovereign immunity grounds.  R&R at 8–9, 18.  In their objections, Plaintiffs

claim that "State Defendants do not have [sovereign] immunity" under the Eleventh Amendment

on the basis that the New York State Social Services Law was "unconstitutional."  *See* ECF

No. 67 ¶¶ 79–90; *see also id.* ¶¶ 204–05 ("How can you be immune from something when it[']s

underlined: _How can you be immune from something when it[']s
unconstitutional_ ?" (emphasis in original)).  That is the same argument previously presented to

Judge Bulsara.  *See* ECF No. 35 ¶¶ 102–17.  Plaintiffs' rehashed argument triggers only clear-

error review, but even had the Court applied *de novo* review, it agrees with Judge Bulsara that

binding precedent precludes Plaintiffs' claims against state agencies like OCFS and the SCR, as

immunity attaches to their status, not their alleged conduct.  *See* R&R at 8–9.  The Court

therefore adopts Judge Bulsara's recommendation and dismisses these claims.  As Judge Bulsara

correctly observed, the sovereign immunity bar deprives the Court of subject-matter jurisdiction

over these claims, requiring their dismissal without prejudice.  *Id.* at 9.

  B.      *Kelleher-Donnaruma*

Judge Bulsara recommends that official-capacity claims against Kelleher-Donnaruma, a

former state agent, be dismissed on sovereign immunity grounds for the reasons just described.

*Id.*  Plaintiffs raise no specific objection to Judge Bulsara's sovereign immunity analysis as

applied to Kelleher-Donnaruma, and whether on clear-error or *de novo* review, the Court must

dismiss the official-capacity claims against her without prejudice.

However, Judge Bulsara recommends that an individual-capacity claim by Alisa against

Kelleher-Donnaruma be allowed to proceed.  *Id.* at 9–12.  As he explained, Alisa alleges that on

November 18, 2021, Kelleher-Donnaruma sent her attorney a letter responding to a request which sought to have SCR records concerning Alisa expunged.  *Id.* at 10; *see also* ECF No. 28 at 88–91 (Nov. 18, 2021, Ltr.).  After Alisa made a request for an administrative appeal of indicated reports[5] on the SCR, Alisa received a hearing on December 18, 2018.  R&R at 10. That hearing led to the initial determination that the indicated reports were "supported by a fair preponderance of the evidence" and were to remain indicated, and a decision was later rendered on May 29, 2019.  *Id.*  "The [AC] makes no allegations that Kelleher-Donnaruma was involved in that hearing or the subsequent decision related to it," but rather, just that Kelleher-Donnaruma "denie[d] Alisa's request for her SCR records to be expunged."  *Id.*  Specifically, Kelleher-Donnaruma wrote that "I regret to inform you that in accordance with [Social Services Law] § 442, your client's request for expungement *nunc pro tunc* cannot be granted at this time."  *Id.* (citing ECF No. 28 at 88).  Because Alisa alleged that she lost employment opportunities— specifically, a potential job at the district's attorney's office—"because of her name's presence on the SCR," Judge Bulsara construed Alisa's claim as a "stigma-plus" claim under the Fourteenth Amendment, which "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process."  *Id.* at 11 (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir.

---

[5]     For ACS investigations commenced before December 31, 2021, "a report alleging child abuse or maltreatment is 'indicated' if [New York State Child Protective Services ("CPS")] determines after an investigation that 'some credible evidence of the alleged abuse or maltreatment exists.'"  *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4 (2d Cir. 2013) (quoting earlier version of N.Y. Soc. Serv. Law § 412(7)).  For investigations started after that date, CPS must find the allegations supported by a "fair preponderance of the evidence" to indicate a report.  N.Y. Soc. Serv. Law § 412(7)).

2003)).  Finding Alisa's allegations adequate, Judge Bulsara recommends that that claim

proceed.  *Id.* at 11–12.[6]

Kelleher-Donnaruma raises four objections:  (1) Alisa "did not sustain any independent

injury from the . . . [l]etter" she sent; (2) that letter "is not an independent denial of Plaintiff's

request" to amend the SCR; (3) Alisa was "not subject to a tangible burden on her employment

prospects" due to the letter or Keller-Donnaruma; and (4) Plaintiff's claims "stem[] directly from

OCFS' actions and decision making, not Kelleher-Donnaruma's," and so sovereign immunity

attaches.  ECF No. 65 at 7.  Because the first and last arguments implicate subject-matter

jurisdiction, the Court begins with these gating issues.

As to the first argument, Kelleher-Donnaruma says that Alisa lacks "standing to bring her

claim" because the letter was "not an independent denial of Plaintiff's request" concerning the

SCR records and is "not traceable to any injury."  ECF No. 65 at 14.  That is the same argument

---

[6]       Judge Bulsara concluded that Alisa could not sue Kelleher-Donnaruma in her official
capacity under *Ex parte Young*, 209 U.S. 123 (1908), which permits a plaintiff to seek injunctive
relief against a state official on the basis that "prospective injunctive relief" against Kelleher-
Donnaruma is "impossible" as she is a former state official.  R&R at 9 n.2.  Alisa does not object
to that specific analysis, and as Judge Bulsara made clear, the sovereign immunity bar does not
affect Alisa's ability at this juncture to maintain suit against Kelleher-Donnaruma in her personal
capacity.  Further, Alisa states that she "is asking for injunctive relief by this [C]ourt to Order the
State Defendants OCFS/SCR to remove her name off the SCR."  ECF No. 67 ¶¶ 85–86.
Notwithstanding that the Court also cannot issue injunctive relief against those Defendants, Alisa
has a more basic problem under *Ex parte Young*, which is that it requires "an ongoing violation
of federal law."  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645–46
(2002).  Here, though, Alisa has just alleged a "single act that continues to have negative
consequences for [her]."  *Brown v. New York*, 975 F. Supp. 2d 209, 223 (N.D.N.Y. 2013).  *Ex
parte Young* does not permit forward-looking relief based on "federal law ha[ving] been violated
at one time or another . . . in the past."  *Id.*; *see Van Oss v. New York*, 783 F. Supp. 2d 681, 693
(S.D.N.Y. 2011) ("OCFS would be forced to rectify past federal constitutional violations, a result
prohibited by the Eleventh Amendment."); *cf. Finch v. OCFS*, 499 F. Supp. 2d 521, 533, 538
(S.D.N.Y. 2007) (allowing injunctive relief claim to proceed where the plaintiffs alleged
"inordinate delays in the scheduling of administrative hearings" to clear their names from the
SCR, which impinged upon their interest in "pursu[ing] one's employment of choice and . . .
foster care licensure").  Accordingly, Judge Bulsara's sovereign immunity analysis stands as is.

she previously presented, albeit explicitly in terms of Article III standing, to Judge Bulsara.  ECF No. 58 at 3 (Kelleher-Donnaruma's Motion to Dismiss).  But in the R&R, Judge Bulsara rejected that challenge, writing that "the November 2021 Letter constituted an independent denial of Alisa's request to expunge her SCR records, and thus, that denial caused her an independent injury that was traceable to Kelleher-Donnaruma."  R&R at 11–12.  Although not required, the Court applies *de novo* review and agrees with Judge Bulsara that the denial of the expungement request caused Plaintiff an injury in the form of a lost employment opportunity.  That is sufficient for Article III purposes.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

On the other hand, the Court agrees with Judge Bulsara that Patrick's and James's monetary claims against Kelleher-Donnaruma must be dismissed for lack of Article III injury, as "[a]ny injury suffered from [Kelleher-Donnaruma's] decision on the SCR placement was suffered by Alisa, not Patrick or James, whose names were not on the registry."  R&R at 19.  No Plaintiff objects to this recommendation.  Thus, finding no clear error, the Court's dismisses without prejudice Patrick's and James's monetary claims against Kelleher-Donnaruma for lack of subject-matter jurisdiction.

Similarly, Kelleher-Donnaruma claims that the letter sent to Alisa's lawyer "simply restate[d] OCFS's 2019 decision to uphold the indicated SCR reports" and did not constitute "any independent action or inaction specific to Kelleher-Donnaruma."  ECF No. 65 at 24.  As such, according to Defendant, the real party in interest is the state agency, which enjoys sovereign immunity.  *Id.*  Judge Bulsara rejected the exact argument Kelleher-Donnaruma now advances, *see* ECF No. 58 at 2, concluding the monetary claim against Kelleher-Donnaruma in

her individual capacity could proceed, R&R at 9–10.  To be clear, the Court is sympathetic to the potential fairness concerns implicated by subjecting Kelleher-Donnaruma to suit for performing what appears to have been a largely ministerial act.  However, even applying *de novo* review, the Court finds that Judge Bulsara correctly applied binding Second Circuit precedent, which makes clear that "[w]here a complaint specifically seeks damages from defendants in their individual capacities," as here, "the mere fact that the state may reimburse them does not make the state the real party in interest."  *State Emps. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 137 (2d Cir. 2013); *see also Clark v. Schroeder*, 847 F. App'x 92, 94 (2d Cir. 2021) ("[T]he Eleventh Amendment does not shield defendants sued for money damages in their individual capacities.").  Thus, sovereign immunity does not bar Alisa's money damages claim.

On the merits, Kelleher-Donnaruma's remaining arguments are persuasive.  Specifically, she claims that Plaintiff has failed to plausibly allege the "plus" part of a stigma-plus claim.  ECF No. 65 at 15–16.  In particular, she notes that Kelleher-Donnaruma's letter acknowledged the difficulty in finding employment at the district attorney's office, meaning that the letter itself could not have caused that alleged injury.  *Id.*  More generally, Kelleher-Donnaruma says that Alisa "provided no indication of an interest or attempt to work in an industry that requires SCR searches for hiring."  *Id.* at 23.  These arguments, and others presented by Kelleher-Donnaruma on the merits, are weighty, but they are procedurally improper.  As Judge Bulsara correctly observed, Kelleher-Donnaruma asserted before him just that Alisa failed to state a claim but "d[id] not make any arguments disputing the merits of Alisa's stigma-plus claim."  R&R at 11.  And it is well established that "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all."  *Piligian v. Icahn Sch. of Med.*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020); *see*

*also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 305 (E.D.N.Y. 2013) ("[Parties] cannot use their objections to add a claim that was not properly before the Magistrate Judge. This type of ambush defeats the goals of the Magistrate Judge's statute . . . ."). Kelleher-Donnaruma's arguments on the stigma-plus claim may very well succeed on summary judgment, particularly after she has had the chance to take discovery from Alisa concerning her employment, but the Court may not entertain them for the first time now.[7]

## II.    City Defendants

### A.    *Alisa's Claims*

Judge Bulsara recommends the dismissal of all of Alisa's claims against the City Defendants as time-barred.  R&R at 12.  Applying the three-year statute of limitations for Section 1983 actions, he concluded that Alisa's Section 1983 claims based on the two removals of Patrick and James in March and July 2017[8] are time-barred because this suit was not filed

---

[7]      In her objections, Kelleher-Donnaruma suggests that Judge Bulsara granted her insufficient page limits for her letter motion joining OCFS' and the SCR's motion to dismiss, stating that she "summarized" the argument that Alisa failed to state a claim in her letter motion.  ECF No. 65 at 10.  The Court disagrees.  The original motion to dismiss never addressed the merits of a stigma-plus claim in any form.  *See* ECF No. 32 at 28–32.

[8]      In her objection, Alisa states that no removal took place on July 7.  ECF No. 67 ¶ 109. Rather, it was a "[d]irect child placement," which she says was "NOT a child removal."  *Id.* Patrick and James later make the same argument.  *Id.* ¶ 186.  As Judge Bulsara noted, on that date, Patrick and James were removed from Alisa's custody and placed with their father pursuant to a Family Court order.  R&R at 4.  Thus, Plaintiffs' distinction is at most a semantic one, but it also appears to be incorrect as a factual matter, as the Family Court explicitly issued "Removal Order[s]."  *See* ECF No. 39-3 at 4, 7; *see also Fowler v. Robinson*, No. 94-cv-836, 1996 WL 67994, at *11 (N.D.N.Y. Feb. 15, 1996) ("Read in context, the word 'removal' in [the Social Services Law] refers to removals from parental custody, not to all 'removals' of children from wherever they happen to be, to some other place . . . .").  If anything, adopting Plaintiffs' argument that no removal occurred in July would potentially limit the scope of liability for Defendants because it suggests *less* wrongful conduct took place than alleged on the face of the AC.  Judge Bulsara, correctly interpreting *pro se* Plaintiffs' claims liberally, declined to narrow the claims in that way.  Nor will this Court.  In the end, this point is immaterial because it has no effect on the timeliness analysis, nor on the viability of any of the pleaded causes of action.

until April 21, 2023.  *Id.* at 13.  In addition, Judge Bulsara rejected Alisa's argument that her claims did not accrue until the Family Court vacated the prior orders against her in April 2021, assuming that such vacatur could be used to state a malicious prosecution claim so as to invoke *Heck v. Humphrey*'s, 512 U.S. 477, 489–90 (1994), exception to the standard accrual rule.  R&R at 14.  He concluded that any malicious prosecution claim would fail because there was probable cause underlying the removal orders.  *Id.* at 14–17.

Alisa objects and argues that she can take advantage of *Heck* because "there was never any probable cause to the fabricated neglect allegations."  ECF No. 67 ¶ 91.  Over many pages, Alisa provides a detailed chronology of events.  *See id.* ¶¶ 91–155.[9]  However, she fails to meaningfully engage with Judge Bulsara's probable cause analysis and instead seeks to relitigate wholesale the State's and City's practices and the merits of her state court proceedings.[10]  Her primary argument is that Simmons fabricated evidence to obtain the removal orders, *id.* ¶ 93, the exact claim she previously presented to Judge Bulsara, *e.g.*, ECF No. 43 ¶ 54 (Plaintiffs' Opposition to Motions to Dismiss).  Fully appreciating Alisa's argument, Judge Bulsara concluded that "there was nevertheless probable cause, independent of those allegedly false statements" because of the presence of other allegations of child neglect not alleged to have been fabricated and, indeed, supported by the AC.  *See* R&R at 15–16.  Specifically, those other allegations are a tip from the brothers' school concerning Alisa's "delusional" behavior and an anonymous tip that Alisa had been psychiatrically hospitalized in Washington, D.C., just one

---

[9]     Some paragraphs in this range are out of order.  The Court refers to the full range.

[10]    *See, e.g.*, ECF No. 67 ¶ 96 (complaining of allegedly deficient service of process in March 2017); *id.* ¶¶ 120–21 (arguing that because ACS instructed the children's father to stop making child support payments in July 2017, Plaintiffs went into foreclosure); *id.* ¶¶ 139–41 (contesting family court jurisdiction and the sufficiency of ACS' productions in Family Court).

week before Simmons visited the McCoy home.  *Id.*[11]  Against this backdrop, Judge Bulsara correctly applied binding Second Circuit precedent holding that where there is an independent source of probable cause, the presence of alleged fabricated evidence will not vitiate it.  *Id.* at 16 (citing *Frost v. NYPD*, 980 F.3d 231, 242 (2d Cir. 2020)).  Alisa's assertions to the contrary, albeit forceful, do nothing to sway the Court.  Even if the Court were to apply *de novo* review, for the reasons explained above, it would agree with Judge Bulsara's conclusion that because Alisa cannot state a malicious prosecution claim, she also cannot invoke *Heck*, the sole basis to revive her otherwise untimely claims against the City Defendants.  Accordingly, Alisa's claims against them are dismissed with prejudice.

B.     *Patrick's and James's Claims*

i.     Proper Defendants

Judge Bulsara recommends the dismissal of ACS and the NYPD on the basis that they are non-suable entities.  *Id.* at 20.  Plaintiffs do not object, and finding no clear error, the Court agrees.  These claims are dismissed with prejudice.[12]  Judge Bulsara also recommends the dismissal of Patrick's and James's claims against Hansell, the former ACS commissioner, on the basis that they have failed to allege Hansell's personal involvement in their cases, as required to

---

[11]     Alisa repeatedly emphasizes that she was hospitalized following a car accident.  *E.g.*, ECF No. 67-5 at 1.  However, the Court agrees with Judge Bulsara that she never disputes the allegations regarding her psychiatric treatment at the hospital, as described by Simmons in the neglect petitions.  *See* R&R at 16; AC ¶ 82; ECF No. 39-1 at 6.

[12]     This also applies to the DOE.  *See, e.g.*, *Bonilla v. City of New York*, No. 22-cv-7113, 2023 WL 8372859, at *3 n.4 (S.D.N.Y. Dec. 4, 2023).  The Court need not dismiss the DOE on this basis, though, because as discussed *infra*, the DOE will be dismissed because no claims survive against it.

state a claim under Section 1983.  R&R at 20–21.[13]  Plaintiffs do not object, and again finding no clear error, the Court agrees here, too.  The claims against him are dismissed with prejudice.  As to the remaining Defendants (the City, Simmons, Palumbo, and the DOE), Judge Bulsara analyzed Patrick's and James's claims, construed them to raise the strongest arguments they suggested, and placed them into four groups.  The Court discusses each in turn.

ii.      Unreasonable Searches and Seizures

Judge Bulsara analyzed Patrick's and James's claims based on their removals under the framework of a Fourth Amendment search and seizure claim.  *Id.* at 22.  He recommends the dismissal of the illegal search and seizure claim because, for the reasons already explained, the two removals were supported by probable cause.  *Id.* at 22–23.  In their objections, Patrick and James assert that there was no probable cause for any removal.  *E.g.*, ECF No. 67 ¶ 185.  But as with Alisa, their blunt assertions speak past Judge Bulsara's careful probable cause analysis described above.  Applying *de novo* review, the Court agrees with Judge Bulsara, and Patrick's and James's search and seizure claims based on their removals are dismissed with prejudice.

In their objections, Plaintiffs point to two sets of additional allegations that potentially state Fourth Amendment claims against Simmons and the City.  First, they say they alleged that Simmons made regular visits at the brothers' school to interview them as part of her investigation, and that the DOE and school staff "facilitated" these interviews.  ECF No. 67 ¶ 188; AC ¶¶ 89–90, 229–32, 322–23.  In their Opposition, they also suggest that Palumbo participated in these interviews.  ECF No. 43 ¶ 40.  Second, they highlight that after the March

---

[13]      Similarly, there are just a few allegations related to Palumbo, another ACS caseworker, but Palumbo did not move to dismiss based on lack of personal involvement in any allegedly illegal conduct.  Nevertheless, as discussed *infra*, no claims survive against her, so she is ultimately also dismissed.

removal, they were subject to medical examinations at the hospital, which did not turn up evidence of abuse or neglect.  ECF No. 67 ¶ 190; AC ¶¶ 103, 116, 326–28.  Judge Bulsara grouped this conduct together with the removals.  *See* R&R at 22 & n.8.  And although the City Defendants did not analyze Plaintiffs' claims at this level of granularity in their motion to dismiss, the Court is cognizant that in a *pro se* case, its "imagination should be limited only by [Plaintiffs'] factual allegations, not by the legal claims set out in [their] pleadings," especially at this preliminary juncture.  *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).  Thus, because these allegations may form the bases for standalone Fourth Amendment claims separate from the removals, the Court now examines them separately.  *See Tenenbaum v. Williams*, 193 F.3d 581, 601–06 (2d Cir. 1999) (examining child's removal from school and subsequent medical examination as distinct acts giving rise to liability under the Fourth Amendment).

As it relates to the in-school interviews by Simmons (and possibly Palumbo), the Court must first determine if there was a seizure, and if so, evaluate whether that seizure was reasonable under the Fourth Amendment.  *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 359–60 (S.D.N.Y. 2012).  At the first step, "a seizure occurs where, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  *Id.* at 360 (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir. 2000)).  In this context, many courts "have held or assumed that an in-school interview of a child to investigate allegations of parental abuse can constitute a seizure."  *Id.* at 362–63.  Here, taking the AC's well-pleaded allegations as true, as the Court must, the Court finds that Patrick and James have adequately alleged that they were seized during the in-school interviews by Simmons.  On these facts, where the brothers allege that Simmons removed them from their classes approximately seven times between February 20, 2017, and March 8, 2017, and with the facilitation of school

personnel and without parental consent, placed them into a private room for Simmons to conduct

the interviews, the Court has no trouble concluding that a reasonable thirteen-year-old "would

not have thought []he was free to leave or decline the adult[']s questioning." *Id.* at 363; AC

¶¶ 229–31; ECF No. 43 ¶¶ 39, 41, 47.[14]  Thus, Patrick and James have adequately alleged

seizures by Simmons, Palumbo, and the DOE.

At the second step of the Fourth Amendment analysis, the Court must determine whether

those seizures were reasonable.  *Phillips*, 894 F. Supp. 2d at 363.  As several district courts have

recognized, the Second Circuit has not definitively held whether the traditional probable cause

standard or "a lesser, reasonable person standard," announced by the Supreme Court in *New

Jersey v. T.L.O.*, 469 U.S. 325 (1985), applies in this setting.  *Estiverne v. Esernio-Jenssen*, 833

F. Supp. 2d 356, 376 (E.D.N.Y. 2011); *Phillips*, 894 F. Supp. 2d at 364–65; *see also Guan N. v.

DOE*, No. 11-cv-4299, 2014 WL 1275487, at *21 (S.D.N.Y. Mar. 24, 2014).[15]  The Court

assumes *arguendo* that the more demanding probable cause standard applies.  *See Phillips*, 894

F. Supp. 2d at 366.  In applying that standard, the Second Circuit has drawn from the warrantless

arrest context.  *See Tenenbaum*, 193 F.3d at 603 ("In general, probable cause to arrest exists

when the officers have knowledge or reasonably trustworthy information of facts and

---

[14]     To allow them to present their strongest case, the Court treats the additional facts
included in *pro se* Plaintiffs' opposition to the motions to dismiss, as well as their objections to
the R&R, as if they were included in a formal second amended complaint.  *See Bledsoe v. Delta
Air Lines*, No. 23-cv-03146, 2024 WL 1142321, at *1 n.2 (E.D.N.Y. Mar. 15, 2024).

[15]     "Under *T.L.O.*, an in-school search is permissible if there are 'reasonable grounds for
suspecting that the search will turn up evidence that the student has violated or is violating either
the law or the rules of the school,' and if 'the measures adopted are reasonably related to the
objectives of the search and not excessively intrusive in light of the age and sex of the student
and the nature of the infraction.'"  *Guan N.*, 2014 WL 1275487, at *21 (quoting *T.L.O.*, 469 U.S.
at 341–42)).  As Judge Nathan explained in *Guan N.*, that test was really developed for the
school discipline context, and so "it is doubtful whether it extends to in-school seizures unrelated
to that interest."  *Id.*

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.").  As applied here, if the information possessed by Simmons (or Palumbo) "would have warranted a person of reasonable caution" to believe that the brothers were "subject to the danger of [neglect]" if not interviewed at school before court authorization could reasonably have been obtained, then Simmons had probable cause to conduct the interviews.  *Id.* at 604; *see also Phillips*, 894 F. Supp. 2d at 366 (asking if there was "probable cause . . . to suspect abuse at the time [the child] was interviewed").

On this point, the Court easily concludes that there was probable cause for Simmons (or Palumbo) to conduct the in-school interviews for substantially the same reasons that Judge Bulsara described in his probable cause analysis previously discussed.  *See* R&R at 15–16. Specifically, Plaintiffs allege that on February 20, 2017, Simmons informed Plaintiffs that "ACS received an anonymous complaint alleging that Alisa had been hospitalized in Washington D.C. the prior week."  AC ¶ 82.  Furthermore, at the time Simmons took over the case, ACS had already received the report about Alisa's concerning behavior at the boys' school.  *Id.* ¶¶ 71, 81. That is enough for Simmons to have believed that the boys were neglected when she conducted the interviews.  *Cf. Schulkers v. Kammer*, 955 F.3d 520, 538 (6th Cir. 2020) (finding constitutional violation where the plaintiffs alleged the "[d]efendants did not have *any* plausible suspicion that the . . . children were subjected to abuse or neglect at the time they conducted the interviews" (emphasis in original)).  In addition, the Court's conclusion is bolstered by the fact that, unlike in *Phillips*, 894 F. Supp. 2d at 366, this case involved only allegations of neglect,

which imposes liability for a broad swathe of action and inaction,[16] as opposed to the more demanding and narrowly defined abuse statute.  *See generally Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("To ascertain the existence of probable cause, we look at the facts as the officers knew them in light of the specific elements of each crime.").[17]  Any Fourth Amendment claim based on the in-school interviews by Simmons is therefore dismissed with prejudice.

The second category of conduct implicating the Fourth Amendment relates to the medical examinations, and Patrick's and James's allegations on this front compel a different conclusion on dismissal.  For context, Plaintiffs allege that after the March removal, "Patrick and James were brought to a Hospital Emergency Room for a physical examination."  AC ¶ 103.  At Simmons's direction, doctors "physically examined [them] and confirmed the fact that they were not abused or neglected," even though there had been no allegation of child abuse.  *Id.* ¶¶ 116, 327–28.  Plaintiffs describe these examinations as "strip searches."  ECF No. 43 ¶ 51.  As an initial matter, Plaintiffs adequately allege that because the searches were "undertaken at the initiative of a state official and served primarily an investigative function[,] . . . Fourth Amendment and bodily integrity interests of the child[ren] are implicated."  *Tenenbaum*, 193

---

[16]  Like most child neglect statutes, New York's version at the time employed a capacious definition.  Specifically, it defined a neglected child as one "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care," including "in providing the child with proper supervision."  *See* N.Y. Soc. Serv. Law § 371(4-a)(i)(B) (effective Sept. 18, 2012, to Sept. 30, 2019).

[17]  For the same reason, Patrick and James's claim that their Fourth Amendment rights were violated when Simmons interviewed them at home must be dismissed because of the presence of probable cause.  *See* AC ¶ 324.  It also fails for the independent reason that Alisa consented to the at-home interviews because she believed she "had nothing to hide," ECF No. 67-4 at 5, which makes it doctrinally impossible for Simmons to have violated Patrick's and James's Fourth Amendment rights.  *Tenenbaum*, 193 F.3d at 602 (discussing parental consent).

F.3d at 606.[18]  As such, Patrick and James have adequately pleaded that they were subject to a Fourth Amendment search.  *See id.* at 605–06 (affirming district court's determination that child's medical examination was a warrantless search).

As above, the question again is whether such medical examinations of Patrick and James were reasonable.  Assuming again that the probable cause standard applies, but even if a lower, reasonable person standard applies, the Court, construing Plaintiffs' allegations in their favor, cannot conclude that the medical examinations were reasonable as a matter of law.  First, just because Simmons may have had probable cause to conduct interviews of the boys or a court order to remove them does not lead to the conclusion that there was also probable cause to direct the medical examinations.  *See Estiverne*, 833 F. Supp. 2d at 375–379 (evaluating separately the reasonableness of the child's detention at the hospital, medical testing at the hospital, and removal from parents' custody).  Notably, the March removal order from the Family Court did not direct or authorize medical examinations of the brothers.  *See* ECF No. 39-2.  And based on what Plaintiffs claim Simmons knew at the time, Patrick and James have adequately alleged that there was "insufficient justification for performing the examination[s]" without Family Court authorization.  *Tenenbaum*, 193 F.3d at 606.  Specifically, the Court cannot say that in these circumstances, "strip searches" were reasonable, especially where the petition Simmons filed with the Family Court alleged only neglect, not abuse, and did not contain any allegations of

---

[18]     This is arguably a close call because Patrick and James state that the medical examinations were "for purely procedural/clearance to be brought [to a] foster care facility." ECF No. 67 ¶ 36.  Nevertheless, construing their allegations in their favor, they sufficiently allege that even such a clearance examination served a "primarily" investigative purpose, rather than, for example, a purely medical one. *Van Emrik v. Chemung Cnty. Dep't of Soc. Servs.*, 911 F.2d 863, 867 (2d Cir. 1990).

physical injury to the brothers.  *See* ECF No. 39-1 at 12–13.[19]  Accordingly, this claim should

proceed against Simmons.  However, it should not proceed as a *Monell* claim against the City

because Plaintiffs never allege that the medical examinations were carried out as a matter of

municipal custom or policy.  Nor do their factual allegations suggest as much.  *Cf. Guan N.*,

2014 WL 1275487, at *22 ("Because it lacks any . . . allegations concerning DOE policy with

respect to unconsented student interviews, the [third amended complaint] does not sufficiently

allege that [the child's] interview was the result of a municipal policy.").

iii.     <u>Substantive Due Process</u>

The Court also agrees with Judge Bulsara that Patrick's and James's substantive due

process claims must be dismissed because they are properly evaluated as search and seizure

claims, and binding authority requires the Court to apply the more specific constitutional

provision in this setup.  R&R at 23 (citing *Southerland v. City of New York*, 680 F.3d 127, 142–

43 (2d Cir. 2012)).[20]  Patrick and James object on the basis that their "Fourth Amendment claim

should not be dismissed simply since it was stated as a substantive due process claim."  ECF

No. 67 ¶¶ 187, 191.  That misinterprets the R&R, which recommends dismissal of the

---

[19]     Here, the Court notes that in the motion to dismiss posture, it has only one side of the factual story, and factual development may very well indicate, for example, that upon removal, Simmons discovered "exigent circumstances" requiring immediate medical intervention.  *See Tenenbaum*, 193 F.3d at 606.  In that situation, the searches would of course survive scrutiny under the Fourth Amendment.  *Id.*  Additionally, Simmons may be entitled to qualified immunity for her conduct.  *See id.* (finding qualified immunity to apply after concluding that a medical examination of a child violated the Fourth Amendment).

[20]     Although *Southerland* related to removals, as the prior analysis demonstrates, and as other courts have found, the additional alleged conduct (in-school interviews and medical examinations) are properly categorized as Fourth Amendment claims.  "Because [Patrick and James] can maintain . . . Fourth Amendment claim[s], [they] cannot assert . . . additional substantive due process claim[s] and any such claim[s] [are] dismissed."  *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 549 n.17 (E.D.N.Y. 2013).

substantive due process claim because of the availability of the search and seizure claim, and separately recommends the dismissal of the search and seizure claim based on the presence of probable cause. *See* R&R at 22–23. In other words, Judge Bulsara does not recommend that dismissal of the search and seizure claim simply because Plaintiffs also included a substantive due process claim. There being no actual objection to Judge Bulsara's recommendation as to the substantive due process claim, under any standard of review, the Court agrees that it is unavailable to Patrick and James. It is therefore dismissed with prejudice.

iv.      <u>Procedural Due Process</u>

Judge Bulsara recommends the dismissal of Patrick's and James's procedural due process claims based on their removals. R&R at 24–25. He correctly identifies the two-part test for such a claim: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Id.* at 24 (quoting *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022)). As it concerns the removals, after finding that Patrick and James satisfied the first step, Judge Bulsara concluded that they "cannot plausibly allege a procedural due process violation, in a case where their removal was effected pursuant to an *ex parte* court order supported by probable cause, and they had a post-deprivation hearing pursuant to which they were returned to their mother's custody." *Id.* at 24–25. Patrick and James object, arguing that "City Defendants do not deny the failure to properly serve Alisa a Summons and/or Notice of Hearing notifying Alisa that a court proceeding existed." ECF No. 67 ¶ 153. This appears to refer to the allegations in the AC that during the initial removal of Patrick and James in March 2017, "Simmons handed [to Alisa] a Neglect Petition without a Notice for Hearing and an *ex parte* Temporary Restraining Order filed by ACS" and that "Alisa did not get any notice or

19

service of the Notice of Hearing for March 14, 2017 or the Neglect Petitions."  AC ¶¶ 101, 113;
*see also* ECF No. 67 ¶ 96.

Applying *de novo* review, the Court agrees with Judge Bulsara that Patrick and James's
claim fails.  As Judge Vitaliano has explained, "[i]t is questionable whether any notice at all is
*constitutionally* required for § 1027 [removal] hearings, but that broader point is academic in this
case because reasonable efforts to contact [Alisa] were made."  *Green ex rel. T.C. v. Mattingly*,
No. 07-cv-1790, 2010 WL 3824119, at *9 (E.D.N.Y. Sept. 23, 2010) (emphasis in original).
Indeed, Plaintiffs' own allegations defeat their claim.  They provide a screenshot to the Court
showing that prior to the first removal, Simmons sent the following message to Alisa:  "Good
morning Ms. McCoy.  This is Sueann from ACS.  I tried reaching out to you but you won't listen
to me.  We had a conference today and we are going to file a neglect petition against you for the
twins.  **Please be in court today at 2:00 pm**[.]  The address is 100 Richmond Terrace.  Staten
Island Family Court.  Thanks[.]"  ECF No. 67-5 at 5 (emphasis added); *see also* AC ¶¶ 95–96.
To that, Alisa replied:  "Again I will let my lawyer know[.]  Kindly stop harassing me[.]"  ECF
No. 67-5 at 5.  And when the initial date for the neglect hearing was rescheduled by the Family
Court, Simmons again texted Alisa to inform her as much.  ECF No. 67-4 at 18–19; *see also*
ECF No. 67 at 10.  That notice is "determinative" and makes dismissal appropriate.  *Green*, 2010
WL 3824119, at *9.[21]

In addition, the Second Circuit has treated procedural due process claims in this area
similarly to Fourth Amendment claims.  *See Tenenbaum*, 193 F.3d at 605–06.  Therefore,
consistent with the Fourth Amendment analysis above, the Court also considers whether Patrick

---

[21]     Although not relevant to the analysis, Alisa also received information from her lawyer
about the post-deprivation hearings, *see* AC ¶ 96, and there is no allegation that any of the
alleged service defects prejudiced Alisa (*e.g.*, she missed a hearing) or the brothers.

and James can maintain a procedural due process claim based on Simmons's in-school

interviews and the medical examinations, and reaches the same outcomes as above.  The Court

easily disposes of any procedural due process claim based on the in-school interviews because

Plaintiffs fail to allege that Simmons (or Palumbo) deprived Patrick and James of a fundamental

liberty interest in "not being dislocated from the emotional attachments that derive from the

intimacy of daily family association."  *Kia P.*, 235 F.3d at 759.  That right is "parallel" to

parents' "constitutionally protected liberty interest in the care, custody and management of their

children."  *Id.*  On this point, the Court is persuaded by Judge Karas's comprehensive analysis in

*Phillips*, in which he recognized that the parents' interest "could be threatened by government

conduct short of . . . physical removal," but not in a case where "[child protective services]

officials interviewed [the child] only after receiving . . . information . . . about possible abuse at

home."  894 F. Supp. 2d at 377–78.  As here, "[w]hile some of the questions asked during the

interview involved intimate and sensitive matters, the Parent Plaintiffs have cited no authority

that CPS officials are required to obtain a court order, or pursue other investigative means,

before interviewing a child about whom the officials have some information suggesting abuse"

or neglect.  *Id.*  That analysis holds true in this case with respect to child plaintiffs.  *See*

*Cornigans v. Mark Country Day Sch.*, No. 03-cv-1414, 2006 WL 3950335, at *6 (E.D.N.Y. July

12, 2006) (in case involving child plaintiff, noting the absence of authority "holding that

interviewing a child at her school in connection with an abuse investigation without the parents'

consent or notice constitutes a removal or other interference triggering due process interests").

This claim is therefore dismissed with prejudice.

  As with the Fourth Amendment, the Court must reach a different conclusion in

connection with the medical examinations.  *See Phillips*, 894 F. Supp. 2d at 378 (suggesting that

the outcome of a procedural due process claim based on in-school interviews might be different in the case of a "physical search or medical examination").  Clearly, the medical examinations impinged on the brothers' constitutionally protected bodily integrity interests.  *Tenenbaum*, 193 F.3d at 597–99, 606.  And here, Patrick and James adequately allege that there was no emergency, parental consent, nor a court order authorizing the medical examinations at the hospital.  AC ¶¶ 105, 116–17; ECF No. 67 ¶ 190.  That suffices to state a procedural due process claim against Simmons for directing those searches.  *Tenenbaum*, 193 F.3d at 599.

v.      <u>Fabricated Evidence Claim</u>

Judge Bulsara recommends allowing Patrick and James's fair trial claim based on Simmons's alleged fabrication of evidence to proceed.  R&R at 25–27.  Their claim is based on "two pieces of specific, allegedly fabricated information:  (1) Simmons's false allegation that Patrick and James were left alone and unsupervised on February 14, 2017, and (2) Simmons's false statements that Patrick and James allegedly made to her in the Affidavit with the Neglect Petition."  *Id.* at 26 (internal citations and quotation omitted).  The City raises several objections to the recommendation.  First, it casts doubt on whether Patrick and James can even maintain a fair trial claim based on proceedings before the civil Family Court.  ECF No. 66 at 7–8.  The Court, following the Second Circuit's lead, shares that doubt, especially because Patrick and James have not alleged any "conscience-shocking" conduct.  *See Washington v. Cnty. of Rockland*, 373 F.3d 310, 315–16 (2d Cir. 2004) ("While we did not foreclose the possibility that civil prosecution could give rise to a cause of action under § 1983, we surmised that, absent official conduct that is conscience-shocking, it normally will not.").  Nevertheless, Second Circuit precedent does not explicitly foreclose this kind of claim, and the City points to no instance in which a district court has invoked such a rationale to dismiss a fair trial claim in this

posture.  Absent authority compelling a different outcome, the Court will not dismiss on this basis at this early stage.

Second, the City Defendants argue that Patrick and James cannot maintain a Section 1983 fair trial claim when the underlying neglect case involved only the prosecution of their mother. ECF No. 66 at 9.  The Court is not aware of authority extending Section 1983 liability to allow children whose parents are subject to adversarial family court proceedings to maintain their own fair trial claims based on deprivations of liberty they derivatively experience as a result of those proceedings.  Indeed, doing so seems to contravene the purpose of Section 1983 in this context, which allows a plaintiff to "seek[] redress for [her] prosecution."  *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023); *see also McDonough v. Smith*, 588 U.S. 109, 117 (2019) ("[The plaintiff's] claim requires him to show that the criminal proceedings *against him*—and deprivations of *his* liberty—were caused by [the defendant's] malfeasance in fabricating evidence." (emphases added)).  As persuasive as this argument is, it was not raised before Judge Bulsara, and just as the Court refused to entertain Kelleher-Donnaruma's new argument raised in an objection, *see supra* at 8–9, it will not do so here.  Simmons may very well prevail on this argument at summary judgment, but for now, the Court declines to adopt their novel, albeit serious, proposition.  There being no further objections to Judge Bulsara's analysis of the evidence fabrication claim, and detecting no clear error, the Court adopts the recommendation to allow this claim to proceed against Simmons.

Having found a plausibly alleged constitutional violation, Judge Bulsara further recommends that that the brothers' fair trial claim based on evidence fabrication also proceed against the City pursuant to *Monell*.  R&R at 27–28.  He determined that Plaintiffs' allegation that "ACS has a policy of making allegations of mental health issues," which "is done as ACS

23

knows that allegations of mental health will permit it to have access to medical records [and] otherwise private health information that is protected," AC ¶ 331, was "sufficient for *Monell* purposes," R&R at 28.  The City Defendants object to this finding on the basis that this is no more than a "naked assertion of a policy or custom."  ECF No. 66 at 5–7.

Respectfully, this Court finds that Patrick's and James's allegations fail to satisfy *Monell*. "To hold the City liable for a constitutional tort under § 1983, the 'execution of [the City]'s policy or custom must 'inflict[] the injury.'"  *Persaud v. City of New York*, No. 22-cv-2919, 2024 WL 2159852, at *9 (S.D.N.Y. May 14, 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  The Supreme Court has made clear that there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385–86 (1989).  The mere existence of an allegedly unconstitutional policy is insufficient to trigger liability; rather, *Monell* "*extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segan v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  Against this backdrop, the Court finds that Patrick and James's *Monell* claim is fatally defective for two independent reasons.

First, the Court finds that Patrick and James have not sufficiently alleged the existence of a municipal policy or custom.  Again, their allegation is that "ACS has a policy of making allegations of mental health issues.  This is done as ACS knows that allegations of mental health will permit it to have access to medical records [and] otherwise private health information that is protected."  AC ¶ 331.  But they just state that this is ACS policy without additional factual support.  "The mere assertion, however, that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such

an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds*, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993).  To the extent that Plaintiffs allege that such a policy was implemented in their mother's case (an issue discussed further below), that alone is insufficient to trigger *Monell* liability. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy . . . ."); *accord Persaud*, 2024 WL 2159852, at *11.  And the authority Judge Bulsara relied on is distinguishable.  For example, the allegations in *Buari v. City of New York* were much stronger by a wide margin, as the plaintiff's "allegations of misconduct by the NYPD—*inter alia*, testifying falsely, coercing witnesses to do the same, and permitting [a witness] to sell narcotics without 'heat' from the police . . . [were] factually similar to findings in" a "relatively contemporaneous" government report on the NYPD.  530 F. Supp. 3d 356, 401–02 (S.D.N.Y. 2021).  There is no such factual support in this case.[22]

Second, even had Patrick and James adequately alleged the existence of a policy, they fail to plausibly allege causation, or that the policy caused their constitutional injury.  *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (requiring the Court to apply a "rigorous standard[] of . . . causation" to impose *Monell* liability).  If the Court liberally interprets the

---

[22]    One potentially promising argument from Plaintiffs appears in the form of an audit report of OCFS from the New York State Comptroller published in 2020.  *See* ECF No. 43 at 32–35 ¶¶ 140–43.  Although Plaintiffs' references to the report did not display properly in their filing, *id.* at 34, the Court has located and reviewed the cited material.  *See* Thomas P. DiNapoli, Oversight of Direct Placement of Children (Mar. 2020), *available at* https://perma.cc/YHU3-36JH.  To be sure, that report is critical of OCFS practices, but it does not speak to the type of policy of evidence fabrication Patrick and James allege here, in stark contrast to *Buari*.  More fundamentally, even if ACS is "overseen at the state level by OCFS," *see Elisa W. v. City of New York*, 82 F.4th 115, 120 (2d Cir. 2023), the audit speaks to the practices of OCFS, not ACS, who allegedly created the specific policy pursuant to which Plaintiffs seek to hold the City liable under *Monell*.

claim to be that ACS has a policy of falsely alleging mental health issues to gain access to otherwise-protected medical records of parents, Patrick and James do not plausibly plead that such a policy was implemented in their mother's case.  ECF No. 67 at 29 ¶¶ 146–47 ("ACS has a policy of making mental health allegations in order to have unfettered access to medical records . . . .").  Rather, they repeatedly allege, in a conclusory manner, that Simmons *stole* Alisa's medical records.  ECF No. 67-4 at 5 ("It is unclear how any HIPPA protected information would become know[n] to ACS worker, unless she went through my paperwork that was in living room, when she asked me to leave the room to speak to my children, one at a time."); ECF No. 67 ¶ 45 ("Simmons took the law into her own hands and illegally gained entry into plaintiffs['] home . . . . She must have stolen Alisa's medical records from the home . . . .").  They further claim that at a later hearing in October 2017, Alisa's Court-appointed attorney Schwartz gave his consent for ACS to access Alisa's medical records.  ECF No. 43 ¶ 161.  In sum, nowhere do Plaintiffs plausibly allege that fabricated allegations concerning Alisa's mental health allowed ACS to obtain her medical records.  *Cf.* AC ¶ 139 ("ACS Palumbo had access to any of my medical information in violation of my HIPPA and medical privacy rights.").  Obviously, where Plaintiffs fail to plausibly plead that they were even subjects of the at-issue alleged policy, liability cannot attach under *Monell*.  *See McDonough v. Mata*, 489 F. Supp 3d 1347, 1359 (S.D. Fla. 2020) (rejecting *Monell* liability where the challenged policy had been repealed at the time of the alleged constitutional violation); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) (similar).

The causation problem runs even deeper for the brothers.  As explained above, to state a claim under *Monell*, Plaintiffs must adequately allege "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton*, 489 U.S. at 385–

86.  For example, the Supreme Court has ruled that "[t]he fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation."  *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) (emphasis in original).  As applied here, Patrick and James have not adequately alleged that ACS' alleged policy of fabricating allegations of mental health issues to obtain medical records was the "moving force" behind Simmons's alleged fabrication of evidence and the denial of a right to a fair trial.  Recall the specific alleged fabrications by Simmons that Judge Bulsara found to be well-pleaded:  that Patrick and James were left alone and unsupervised on February 14, 2017, and other statements "that Patrick and James allegedly made to her" and that were included in the neglect petitions.  R&R at 26 (quotation omitted). Neither of those has anything to do with the alleged policy.  Nor is either even generally connected to Alisa's medical records.  Absent such a link, there can be no liability under *Monell*. *See Gruillon v. ACS*, No. 18-cv-3129, 2021 WL 981848, at *15 (S.D.N.Y. Mar. 16, 2021) (rejecting *Monell* claim on causation grounds where the plaintiff's claim that his constitutional rights were violated by ACS were "based on facts . . . idiosyncratic to his case" and not a municipal policy).

For these reasons, the Court adopts Judge Bulsara's recommendation that Patrick and James's fair trial claim proceed against Simmons but declines to adopt the recommendation to allow the *Monell* claim against the City to proceed.  The *Monell* claim is dismissed with prejudice.

### III.    Defendant Schwartz

Judge Bulsara recommends dismissal of Alisa's legal malpractice claim against her Family Court-appointed lawyer Schwartz because it is time-barred.  R&R at 17.  Judge Bulsara

identified the three-year statute of limitations for such claims and, observing that Schwartz represented Alisa only from March 24, 2017, to January 25, 2018, explained that the statute of limitations ran on January 25, 2021, long before[23] Alisa sued. *Id.* at 18. Although Alisa presents voluminous argumentation about the state of representation in New York's family courts, she essentially asks this Court to just look past the time bar in this case. ECF No. 67 ¶¶ 156–83 ("Defendant Schwartz admits to committing legal malpractice only because he feels that the statute of limitations had run out. But he failed to state to the [C]ourt his actions or inactions . . . ."). The Court may not do so. *See Carey v. Int'l Bhd. of Elec. Workers Loc. 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999) ("[S]tatutes of limitation are not to be disregarded by courts out of a vague sympathy for particular litigants."). Under any standard of review, the Court agrees that Alisa's claim is barred, and dismisses that claim with prejudice.

To the extent Alisa also attempted to assert a Section 1983 claim against Schwartz for ineffective assistance, Judge Bulsara recommends denial of such a claim because Schwartz never acted under color of state law, as required by the statute. R&R at 17 n.6. In her objections, Alisa asserts otherwise. *E.g.*, ECF No. 67 ¶ 182 ("Schwartz did act under the color of law since he was not a guardian ad litem or law guardian for Alisa[,] Patrick[,] or James."). Under any standard of review, Judge Bulsara got it right. As the authority he cited establishes, neither public defenders nor guardians *ad litem* act under color of state law, R&R at 17 n.6, and Schwartz is correct in arguing that the status of *not* being a public defender or guardian *ad litem* does not imbue all other types of lawyers with the authority of the state, ECF No. 70 at 8–9. Indeed, binding Second Circuit precedent forecloses bringing court-appointed lawyers representing parents in custody proceedings within the scope of Section 1983 liability. *See Rodriguez v. Weprin*, 116

---

[23] This would be the case even if the Court were to apply tolling under New York's COVID-19-related executive orders. *See* R&R at 13.

F.3d 62, 65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are no subject to suit under . . . § 1983."). Her claim is therefore dismissed with prejudice. Patrick and James bring no claims against Schwartz. R&R at 18 n.7. Thus, all claims against him have been dismissed and the Court terminates him from this action.

## IV.   Leave to Amend

Plaintiffs ask to be permitted "to amend and correct any otherwise futile oversights in the form of legal procedures they have may overlooked." ECF No. 43 ¶ 76. Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiffs opportunity to further amend the AC. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend). "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021).

As this decision makes clear, the Court has conducted a detailed review of all the substantive papers filed by Plaintiffs, including exhibits and documents referenced in their pleadings. Those papers are voluminous and repetitive. Nevertheless, even though not required, the Court has excused compliance with the relevant procedural rules to allow Plaintiffs, who assert many claims against at least 12 Defendants over three different defendant groups, to

present all relevant information so as to allow the Court to make out the "strongest arguments" suggested by their pleadings.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472, 477 (2d Cir. 2006).  At this point, "Plaintiff[s] ha[ve] pleaded [their] case exhaustively."  *See Vasquez v. City of New York – Off. of the Mayor*, No. 22-cv-05068, 2024 WL 1348702, at \*14 (E.D.N.Y. Mar. 30, 2024) (denying *pro se* plaintiff leave to amend).  Based on the foregoing, the Court concludes that granting further leave to amend is inappropriate because there is no "indication that a valid claim might be stated" as to those claims dismissed under Rule 12(b)(6).  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  That is especially the case here because the addition of new factual material will not cure issues with the viability of Plaintiffs' claims.  *See Sung v. DeJoy*, No. 22-cv-07682, 2024 WL 4107212, at \*14 (E.D.N.Y. Sept. 5, 2024) (denying *pro se* plaintiff leave to amend claims dismissed as time-barred); *Woods v. Vermont*, No. 22-cv-00008, 2023 WL 2624352, at \*2 (D. Vt. Mar. 24, 2023) (in *pro se* case, explaining that leave to amend would be futile where claims are barred by sovereign immunity); *Lavrick v. Suffolk Cnty.*, No. 20-cv-609, 2021 WL 2856722, at \*3, \*7 (E.D.N.Y. July 8, 2021) (denying *pro se* plaintiff leave to amend where probable cause defeated malicious prosecution claim and there were insufficient allegations to support a *Monell* claim); *Schuyler v. City of New Rochelle*, No. 23-cv-04151, 2024 WL 167289, at \*4 (S.D.N.Y. Jan. 16, 2024) (denying leave to amend where the plaintiff "offered no explanation for how he would be able to cure the defects in his *Monell* claims").

In any event, because the Court has considered the allegations raised for the first time in Plaintiffs' 48-page Opposition to the Motions to Dismiss and 41 pages of Objections to the R&R, plus 136 pages of exhibits attached thereto, as if they were included in a formal second amended complaint, Plaintiffs have effectively already been given three separate opportunities to make

Case 1:23-cv-03019-HG-SJB   Document 73   Filed 09/30/24   Page 31 of 32 PageID #: 1009

substantive amendments, including once after having had the opportunity to review the R&R. *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022).  That is already two more times than the Second Circuit ordinarily requires, and further leave to replead would be futile.  *See Applewhite v. DOE*, No. 21-cv-2928, 2024 WL 3718675, at *21 (E.D.N.Y. Aug. 8, 2024) (denying *pro se* plaintiffs leave to file what would have effectively been a fourth amended complaint).

## **CONCLUSION**

For the reasons explained above, Judge Bulsara's R&R is adopted with the following three modifications:

- Patrick and James may proceed with a Fourth Amendment claim based on the post-removal medical examinations of them.

- Patrick and James may also proceed with a procedural due process claim based on the same alleged conduct.

- Patrick and James's fair trial claim based on evidence fabrication may proceed only against Simmons and not against the City under *Monell*.

To sum up:

- All claims against OCFS and SCR are dismissed without prejudice for lack of subject-matter jurisdiction.  OCFS and SCR shall be terminated from the action.

- Alisa's stigma-plus claim against Kelleher-Donnaruma survives and is her sole remaining claim.  But Patrick's and James's claims against Kelleher-Donnaruma are dismissed without prejudice for lack of subject-matter jurisdiction.

- Alisa's remaining claims against the City Defendants and Schwartz are time-barred. Schwartz shall be dismissed from the action.

- Patrick's and James's claims against the NYPD, ACS, and Hansell are dismissed with

31

prejudice.  These parties shall be terminated from the action, so none of the City Defendants remain except Simmons.

- Patrick's and James's remaining claims are (1) a Fourth Amendment claim against Simmons based on their medical examinations; (2) a procedural due process claim against Simmons based on their medical examinations; and (3) a fair trial claim against Simmons.

- No claims survive against the City, the DOE, Palumbo, and John and Jane Does.  They shall therefore be terminated from this action.

Kelleher-Donnaruma and Simmons shall answer the AC within 21 days of this Order.  This case is respectfully referred to Judge Bulsara for all pretrial purposes, including the management of discovery, which shall be limited to Alisa's one and Patrick's and James's three remaining claims.  The Clerk of Court is respectfully directed to mail a copy of this Order to *pro se* Plaintiffs.  The Court's staff is also sending this Order, through the District's electronic filing system, to the email address that Plaintiffs included in the AC.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
        September 30, 2024